Maxie Mae PITTMAN, Claimant-Appellant,

v.

SCULLIN STEEL COMPANY, Employer-Respondent,

and

American Automobile Insurance Company, Insurer-Respondent.

No. 44716.

Supreme Court of Missouri.

Division No. 2.

April 9, 1956.

Max M. Librach, St. Louis, for claimant-appellant, Gerald Cohen, St. Louis, of counsel.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for respondents.

STOCKARD, Commissioner.

■ This is an appeal from the judgment of the circuit court of the City of St. Louis affirming an award of the Industrial Commission disallowing compensation alleged to be due to appellant as a dependent of Roosevelt Pittman who on May 25, 1951 sustained fatal injuries resulting from an accident arising out of and in the course of his employment. His average weekly wage warranted an award of $12,000 compensation to a total dependent, if there was one. This is the amount in dispute and establishes jurisdiction in this court. Mo. Const. art. V, § 3 (1945), V.A.M.S.

Following the death of Roosevelt Pittman, claims were filed by Lucy Pittman Wilson, who claimed to be the surviving widow; Maxie Mae Pittman, deceased's daughter and appellant herein; and England Earleen Flowers, deceased's sister. All contended to be total dependents. Helen and Mary Ann Brown, deceased's nieces, filed claims contending to be partial dependents. Odis Billingsley, deceased's sister, made a claim for reimbursement of funeral expenses.

Following a hearing, the referee of the Division of Workmen's Compensation made an award in favor of Maxie Mae Pittman in the amount of $12,000 as compensation, and an award in favor of Odis Billingsley in the amount of $150 for funeral expenses. The claims of all the others were denied. The employer and insurer alone filed an application for review by the Industrial Commission which entered its final award affirming the award in favor of Odis Billingsley, but denied compensation to Maxie Mae Pittman on the ground that she was not a total or partial dependent. An appeal to the circuit court of the City of St. Louis was taken by Maxie Mae Pittman only, who then appealed to this court after the circuit court affirmed the award of the Industrial Commission.

Appellant's claim is based upon her contention that she is the legitimate daughter of the deceased below eighteen years of age at the time of his death and therefore conclusively presumed to be a total dependent. The evidence established that appellant was the child of the deceased and Ella Mae Kilpatrick; that she was born in Mississippi on September 13, 1935; that her parents never entered into a ceremonial marriage; and that she was not in fact a total dependent of the deceased. The evidence further established that the deceased was a resident of the state of Missouri at the time of his death, and that appellant was residing and always had resided with her mother in the state of Mississippi.

■ Section 287.240 RSMo 1949, V.A. M.S., provides that the word "dependent" shall mean "a relative by blood or marriage

of a deceased employee, who is actually dependent for support, in whole or in part, upon his [employee's] wages at the time of the injury." It also provides that certain described persons shall be conclusively presumed to be totally dependent for support upon a deceased employee including "A * * * child * * * whether legitimate or illegitimate, under the age of eighteen years" dependent upon "the parent legally liable for such support or with whom he is living at the time of the death of such parent." Appellant was not living with Roosevelt Pittman at the time of his death, but if appellant was the legitimate daughter of deceased he was "legally liable" for her support, within the purposes of Section 287.240, paragraph 4, RSMo 1949, V.A.M.S. Holley v. Mississippi Lime Co. of Missouri, Mo.Sup., 266 S.W.2d 606.

The parties have presented this case on appeal solely on the question of whether the Industrial Commission correctly found that Roosevelt Pittman and Ella Mae never entered into a valid common-law marriage, and therefore appellant was not the legitimate child of the deceased, except that in her reply brief appellant contends for the first time that as an illegitimate child she is entitled to be conclusively presumed to be a total dependent because there was a legal liability on Roosevelt Pittman to support her.

About 1930 at Eupora, Mississippi, Ella Mae Kilpatrick and Roosevelt Pittman "started living together." They lived together until about three months after appellant's birth on September 13, 1935, when Roosevelt was imprisoned in the penitentiary. There was some testimony that it was about eighteen months after appellant was born when Roosevelt was imprisoned, but in either event after his release from prison he and Ella Mae never resumed their relationship. No divorce was obtained by either party, but Ella Mae stopped using the name Pittman when she and Roosevelt "quit living together." On May 28, 1938 Ella Mae obtained a marriage license and by ceremony married McKinley Hemphill. She stated that she did not obtain a divorce from Roosevelt before marrying Hemphill

because they had never obtained a license. Hemphill obtained a divorce from Ella Mae and by ceremony Ella Mae then married James Henry. She lived with Henry for only a few months, and although no divorce was obtained from him, she testified at the hearing under the name of Ella Mae Hemphill.

During the time Roosevelt and Ella Mae lived together they lived in a rented house near Eupora, Mississippi, and she worked as a cook until she become pregnant. They went to church together and she introduced him as her husband and he introduced her as his wife. The pastor of the church testified that Roosevelt and Ella Mae came to his church in 1935 and joined the church as Mr. and Mrs. Pittman. There was also testimony that Roosevelt's mother treated appellant like a grandchild, and that appellant referred to Roosevelt's sister as "Aunty." However, England Earleen Flowers, a sister of Roosevelt and a claimant contending to be a total dependent, testified that Roosevelt lived with her and her husband "a short time" in 1939, and that she knew Ella Mae had lived with Roosevelt and that appellant was the child of Roosevelt and Ella Mae. But she also testified that she had never heard of Roosevelt being married.

The birth of Maxie Mae was not registered until January 13, 1948, more than twelve years after her birth. The birth certificate issued by the Mississippi State Board of Health, Bureau of Vital Statistics, contained the answer "No" to the question, "Is this a legitimate child?" The certificate listed the name of the father as Roosevelt Pittman and the full name of the mother "before marriage" as Ella Mae *Kilpatridge*. The issuance of the birth certificase was based upon information furnished under oath by Ella Mae, who listed her relationship to appellant as mother, and by Oddie Pitman, whose relationship to appellant was listed as aunt. Oddie Pitman was a sister of Roosevelt and the same person to whom the allowance for funeral expense was made as Odis Billingsley. Roosevelt was present when the application for the birth certificate was made.

Lucy Wilson, who filed a claim as Lucy Pittman contending to be the surviving widow of Roosevelt, testified that she had been previously married to Daniel Neal from whom she had not been divorced, but that about 1934 or 1935 she started living with Roosevelt on a plantation near Greenwood, Mississippi. Apparently this occured after his release from prison, and if so, the time of the commencement of this relationship is stated to be earlier than it could have occurred unless the period of Roosevelt's imprisonment was extremely short. After about two years they moved into Greenwood where they lived together for about six years. During this time, and while Roosevelt was living with Lucy, Ella Mae visited him at least once but there is no evidence that she objected to his relationship with Lucy or that she sought to have him return to her as her husband. Roosevelt and Lucy then moved to Memphis where they lived for about three years and then moved to St. Louis. No ceremonial marriage was ever had, and they separated in 1950 because, according to Lucy, Roosevelt started living with another woman by the name of Sally. Lucy was married to King Wilson on October 2, 1950. There had been no divorce but she was not living with him at the time of the hearing.

Testimony was given in behalf of appellant that Roosevelt frequently wrote to her from St. Louis, that he stated that she was his daughter, and that he made contributions to her support including some items of clothing. Lucy Wilson testified that sometimes Pittman sent money to appellant. Ella Mae testified that during the last year of Roosevelt's life he sent appellant $25 per month, various articles of clothing and also made special gifts to her of money on Easter and Thanksgiving. However, appellant stated on direct examination that all she received from Pittman during the last year of his life was $5 on Valentine Day and $10 on Thanksgiving, that he sent her some other money but that the total she received during the last year of his life was $25. After Roosevelt Pittman was released from prison he did not contribute to the support of Ella Mae.

On June 1, 1951, shortly after the death of Roosevelt, appellant's mother stated to an insurance investigator that appellant's father was Roosevelt, that she and Roosevelt had never been married but that they started living together in 1930 and "lived together, as man and wife," for five years. She further stated that as far as she knew Roosevelt had never been married and that she was the sole support of appellant. On Roosevelt's application for employment with Scullin Steel Company, dated January 22, 1944, he left blank the space for the statement of the number of his children, and he listed his mother as his only dependent. In the space provided for listing all the members of his family, including the name of his wife, he listed his mother, two brothers and two sisters, but did not list a wife or child. However, in 1950, for federal income tax purposes, he listed appellant and two nieces (those referred to previously as claimants) as dependents and designated appellant as a daughter.

■ "In reviewing a compensation case we have the duty to determine whether the Commission's award is supported by competent and substantial evidence upon the whole record. Sec. 22, Art. V, Const. of Mo.1945, V.A. M.S. This court has said that 'This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Of course, the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witnesses gave oral testimony.' " Francis v. Sam Miller Motors, Mo. Sup., 282 S.W.2d 5, 11. See also Wood v. Wagner Electric Corporation, 355 Mo. 670, 197 S.W.2d 647, 649; Seabaugh's Dependents v. Garver Lumber

Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55, 62.

It is the general rule that to create a common-law marriage it is necessary that the parties, being capable of marriage, do more than enter into a mere meretricious relationship; they must have a mutual agreement to become husband and wife. 55 C.J.S., Marriage, § 19. The courts of Mississippi have held that to create a common-law marriage in that state there must be "an agreement between a man and woman to then and there become husband and wife followed by cohabitation." Sims v. Sims, 122 Miss. 745, 85 So. 73, 74. See also Butler's Estate v. McQuarters, 210 Miss. 86, 48 So.2d 617; and United States Fidelity & Guaranty Co. v. Smith, 211 Miss. 573, 52 So.2d 351. Cohabitation and repute alone do not constitute a common-law marriage, but are only evidence tending to raise a presumption of marriage, of more or less strength, according to the circumstances of the case. 35 Am.Jur., Marriage § 200; Annotations: 10 L.R.A. 568; L.R.A.1915E, 8, 33; 124 Am.St.Rep. 104, 120. While this is a strong presumption, Annotation, 124 Am. St.Rep. 120, especially where the legitimacy of a child is involved, yet it is not conclusive and is rebuttable by sufficient evidence to overcome it. 35 Am.Jur., Marriage § 232. However, the presumption of a marriage from cohabitation and reputation is said to be rebutted or overcome by proof of a subsequent ceremonial or actual marriage by one or both of the parties to other persons, at least in the situation where the validity of the subsequent marriage is being challenged, since the presumption of the validity of such ceremonial marriage is stronger than the presumption of the previous marriage from mere cohabitation and reputation alone. 35 Am.Jur., Marriage § 199. Whitman v. Whitman, 206 Miss. 838, 41 So.2d 22; United States Fidelity & Guaranty Co. v. Smith, supra; Weatherford v. Weatherford, 20 Ala. 548, 56 Am. Dec. 206; It has also been held that a subsequent marriage or cohabitation by one or both of the parties with other persons will "neutralize" the presumption of the existence of a former marriage arising out of cohabitation and repute (Annotation: 34 A.L.R. 464, 483) and also that it will "rebut" the presumption of such a former marriage (Annotation: 124 Am.St.Rep. 104, 120).

The evidence in this case concerning the creation of a common-law marriage between Roosevelt Pittman and Ella Mae Kilpatrick is in sharp conflict. Tending to support the creation of a common-law marriage is the testimony, if believed by the trier of facts, that the parties cohabited for five or six years, and had the reputation, at least among some of the community, of being husband and wife. Strongly tending to refute the creation of a common-law marriage, if believed, are the admissions by Ella Mae that she and Pittman were never married; the testimony of Roosevelt's sister that she never heard that they were married; the circumstances of the voluntary listing of appellant as an illegitimate child on the application to register her birth; the subsequent marriages of Ella Mae without obtaining a divorce from Pittman; and the apparent acceptance by both parties, as evidenced by their subsequent conduct, that neither had entered into an agreement then and there to become husband and wife with the resulting obligations of a marriage. Both parties seemingly accepted their relationship as one without obligation and as one that could be terminated at will.

From a careful consideration of the whole record, we conclude that the finding of the Commission that Roosevelt and Ella Mae never entered into a valid common-law marriage, and the necessarily resulting finding that appellant is not the legitimate child of Roosevelt, is based upon competent and substantial evidence.

By reason of the finding of the Commission that appellant was not the legitimate child of Roosevelt, appellant would be entitled to be conclusively presumed to be a total dependent only if, as an illegitimate child, Roosevelt Pittman was "legally liable" for her support by reason of some statutory obligation. We need not

rule on the right of appellant to raise this point for the first time in her reply brief in a case of this nature because the contention is without merit. Pittman was a resident of Missouri and the question of his liability in this respect is governed by the laws of this state. Berkley v. Berkley, Mo.Sup., 246 S.W.2d 804, 34 A.L.R.2d 1456. Section 559.350 RSMo 1949, V.A. M.S., now purports to make it a criminal offense for the father to fail, without good cause, to provide adequate food, clothing, lodging, medical or surgical attention for his illegitimate child below the age of sixteen years whether or not the father has the care and custody of such child. Laws of Missouri, 1953, p. 424. But this statute as now worded was not in effect at the time of the death of Roosevelt on May 25, 1951, and the right of appellant to compensation is determined as of the date of his death. Culberson v. Daniel Hamm Drayage Co., Mo.Sup., 286 S.W.2d 813; Masters v. Southwestern Greyhound Lines, Inc., Mo.App., 205 S.W.2d 882. The statute then in effect did not make it a crime for a father to fail to support his illegitimate child unless the father had the "legal care and custody" of the child. State v. White, 363 Mo. 83, 248 S.W.2d 841; Nelson v. Thompson, Mo.App., 253 S.W.2d 516. The undisputed evidence is that at the time of the death of Roosevelt, appellant was in the care and custody of her mother in Mississippi. Therefore she cannot be presumed to be a total dependent by virtue of any statute of this state making Roosevelt, at the time of his death, "legally liable" for her support. Culberson v. Daniel Hamm Drayage Co., supra.

■ Although appellant does not qualify as one presumed to be a total dependent, an illegitimate child is not disqualified under our Workmen's Compensation Law from showing that he is in fact "dependent for support" upon the wages of the father at the time of his death. Section 287.240 (4) RSMo 1949, V.A.M.S.; Culberson v. Daniel Hamm Drayage Company, supra;

Henderson v. National Bearing Division of American Brake Shoe Co., Mo.App., 267 S.W.2d 349. The appellant does not contend on this appeal that she was in fact a partial dependent, and the Industrial Commission found that Roosevelt Pittman was survived by no total or partial dependents.

■ There is evidence that Roosevelt Pittman at times sent appellant some money and an item or two of clothing. But there was no set amount contributed periodically and there is no evidence that appellant and her mother relied on receiving any support from the deceased employee. At most, it can be said that the deceased employee on a few occasions made presents of money or an item of clothing on certain holidays or at his pleasure. The fact that a person, under no legal obligation to support another, may make occasional gifts does not necessarily require a finding that the recipient of the gifts was partially dependent upon the donor. Mossman v. St. Joseph Lead Co., Mo.Sup., 265 S.W.2d 335. The Industrial Commission found that appellant was not a partial dependent of Roosevelt Pittman and the circuit court affirmed that decision.

■ We conclude from an examination of the whole record that the award of the Commission denying compensation to appellant as a total or partial dependent is based upon competent and substantial evidence, and that the findings and award are not against the overwhelming weight of the evidence.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.