**Jimmie Dean STILLWELL and Katina Stillwell, Appellants,**

v.

**UNIVERSAL CONSTRUCTION CO., Respondent.**

No. WD 51596.

Missouri Court of Appeals, Western District.

May 28, 1996.

James W. Fletcher, Wyrsch Atwell Miraki-
an Lee & Hobbs, P.C., Elizabeth Diane Bak-
er, Kansas City, for appellants.

James F. Stigall, Anna M. Inch, Stigall,
Humphrey, Lucas, Henry, Stigall & Dollar,
L.C., Kansas City, for respondent.

Before SPINDEN, P.J., and BERREY
and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Claimant-Appellant Katina Stillwell ("Kati-
na") appeals the decision of the Missouri
Labor and Industrial Relations Commission
(the Commission) denying her workers' com-
pensation death benefits from Employer–Re-
spondent Universal Construction Company
("Universal" or "Employer") for the death of
its employee Lester Shane Stillwell ("Shane"
or "Employee"). Katina contends on appeal
that she was conclusively entitled to death
benefits as Shane's natural child, despite the
fact that Shane's parental rights as to Katina
were terminated by adoption prior to his
death. In the alternative, Katina claims enti-
tlement to benefits as a total or partial de-
pendent of Shane. We affirm the Commis-
sion's denial of benefits on either ground.

Claimant-Appellant Jimmie Dean Stillwell,
who is Shane's father and Katina's adoptive
father, also appeals. He contends that the
Commission erred in awarding only $2,000 in
burial benefits, the statutory limit in effect at
the time of death, where he demonstrated
actual burial costs of over $4,000. He con-
tends that the statute now in force, which
allows for the recovery of up to $5,000 in
burial costs, should have been applied retro-
actively inasmuch as the insurer refused to
pay the expenses until sometime after the
statute was amended. He also alleges error
in the refusal below to allow Claimant to
amend the pleadings to seek costs for Uni-
versal's refusal to pay the burial expenses.
We affirm the limitation of benefits to $2,000
but remand for a determination of costs and
interest due to Mr. Stillwell.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from a denial of work-
ers' compensation death benefits to Katina
Stillwell and the award of burial expenses to
Shane's father, Jimmie Dean Stillwell, by the
Missouri Labor and Industrial Relations
Commission.

On January 26, 1990, Shane, while em-
ployed by the Universal Construction Com-
pany, fell eight stories from a scaffold to his
death. It is undisputed that the injury which
led to his death arose out of and in the
course of his employment and that Shane's
dependents would be entitled to the maxi-
mum compensation rate of $397.50 per week.

Katina, who claims to be Shane's natural born child, timely filed a claim for workers' compensation death benefits as an alleged dependent of Shane. Katina was born to Virginia DeHaven and Shane on November 2, 1986. Shane and Virginia were never married. Shane's father and step-mother, Jimmie Dean and Peggy Sue Stillwell, assumed custody of their granddaughter Katina at the request of Shane and Virginia when Katina was about four months old. Shane and Virginia both also desired Jimmie and Peggy Sue to adopt Katina, and the latter filed a Petition for Adoption shortly thereafter. The Petition for Adoption was finalized on June 28, 1988. This adoption terminated any and all parental rights of Katina's natural parents, Shane and Virginia. The Decree of Adoption, dated June 28, 1988, states "It is ORDERED, ADJUDGED AND DECREED that from the date of this decree ... any and all rights which the natural father and natural mother may have to said child are hereby terminated and ended."

Although her adoptive parents, Jimmie and Peggy Sue, testified at the hearing below that when they adopted Katina they agreed to return her to Shane when he got "his life back together," the Petition and final Adoption Decree do not mention anything about this agreement.

Katina lived with and was supported by her adoptive parents following the adoption. As her adoptive parents were also Shane's father and stepmother, Katina became an adoptive sister of Shane. The adoptive parents admitted that they were responsible for Katina's basic needs and that they had claimed Katina as a dependent on their tax returns. Katina continued to have a relationship with Shane, however. According to the testimony of the adoptive parents, Shane visited with Katina on a regular basis. He would take her to movies and out to eat. While Katina called the adoptive parents "Mom and Dad", she still referred to Shane as "Daddy Shane."

According to Peggy Sue, Shane also gave Katina dresses, shoes, baby food, diapers, and similar items. A list of items which Peggy Sue recalled Shane had given to Katina during the three years prior to his death was admitted into evidence. The list included approximately 20 dresses, 3 pairs of shoes, socks, hair ties, 3 coats, earrings, 1 rocking chair, toys, diapers, milk, ring, pacifiers and baby food. It also listed several items Shane gave Katina as gifts the Christmas prior to Shane's death.

According to Peggy Sue, Shane would also give her approximately $30 in cash, once or twice a week, for Katina. One time he gave her $70. While Peggy Sue could not remember the exact amount of money, clothing, and so forth that Shane had provided, she estimated it to be approximately $100 to $150 per month. She admitted, however, that the items on the list did not add up to that amount per month. Unfortunately, all of the items were destroyed in a fire about six months after Shane's death.

Both Jimmie and Peggy Sue admitted that the things Shane supplied were not expected and were not received on a regular basis. Rather, they both testified that they were responsible for supplying Katina's basic needs and they did not feel that Shane was obligated to provide any support.

Following the adoption of Katina, Shane ended his relationship with Virginia and moved in with Kathleen Berry and her two sons. Shane was the sole support for Kathleen and her sons. They had a joint checking account out of which Kathleen paid all of the bills. Kathleen and Shane were living together at the time of Shane's death but they were never legally married.[1]

Kathleen refuted some of the facts testified to by the adoptive parents by testifying that, to her knowledge, Shane never gave them money for the support of Katina. She based her statements on the fact that she and Shane had a joint checking account, and on the fact that Shane would give her his paycheck every week to be used for their expenses. She said that the approximately $350 to $400 he earned per week was almost entirely spent on the support of Shane, Kathleen, and her two sons. Kathleen had also

---

1. Kathleen filed a claim for death benefits as an alleged common law wife of Shane. This claim was voluntarily withdrawn after Kathleen was informed that she was not entitled to benefits.

returned to work three months prior to Shane's death because there was no money left after paying the bills. While Kathleen thus denied that Shane gave Katina any financial support, Kathleen admitted that he did give her clothing on her birthdays and for holidays.

On cross-examination, Kathleen admitted to signing Shane's name to one of his paychecks and cashing it following his death. The adoptive parents and Kathleen were also involved in litigation over two vehicles that were titled in Shane's name, but that Kathleen maintained were hers. The vehicles were ultimately turned over to the adoptive parents. The adoptive parents suggested that because of these actions Kathleen's credibility was suspect.

The adoptive father, Jimmie, paid $3,980.36 in burial and related funeral expenses as well as an additional $100 for the grave opening for his son, Shane. Universal denied responsibility and refused to reimburse Jimmie for these expenses. Universal has never given an explanation, so far as the record shows, as to why coverage was denied except to state that it was refusing any payment at all in this case.

Following an evidentiary hearing, the Administrative Law Judge ("ALJ") issued findings of fact and conclusions of law denying death benefits to Katina. The ALJ found that Katina was not conclusively entitled to benefits as the natural child of Shane under Section 287.240.[2] Rather, the ALJ found that when Katina was adopted by the Stillwells, she ceased being Shane's natural child in the eyes of the law. The ALJ further found that she was not entitled to benefits as a total or partial dependent of Shane because she had not established that she was dependent upon Shane's wages for support.

The ALJ based his conclusion on several factors, including the fact that the Stillwells were more than able financially to support Katina. They also admitted that Shane did not provide support on a regular basis and that they were not dependent upon him for support of Katina.

The ALJ also found the testimony of the Stillwells regarding the amount of support provided by Shane was not credible, stating:

> [T]he adoptive parents provided no copies of checks, credit card statements, or any credible evidence to support their allegation that any actual support was provided by the deceased employee.... Instead what they offered was their unsupported testimony and a self-serving list of alleged support contributions, prepared not at the time the support was allegedly provided, but after the deceased employee's death and in an apparent anticipation of litigation.

Moreover, the ALJ found that it was shown on cross-examination of Peggy Sue that the list of items received by Katina was "grossly inflated" and that many of the items listed were gifts and not actual support. Furthermore, "based on the evidence offered at the hearing it was impossible to determine what percent of the actual cost of supporting Katina was allegedly provided by the deceased employee."

The ALJ further found the testimony of Kathleen regarding the amount of support Shane gave Katina was "more credible evidence" than the evidence offered by the Stillwells, stating:

> Her testimony, as set out earlier, showed that the deceased employee's support for Katina would have been minimal at best. Ms. Berry and the deceased employee were living together at the time of his death. Ms. Berry had two minor children and did not begin working until shortly before the deceased employee's death.

> > Thus, during the period when the adoptive parents alleged that the deceased employee, a laborer in the construction field, was providing $100.00 to $150.00 per month to support Katina, he was the sole support of her, himself and his girlfriend and her two children. His girlfriend also testified that she cashed the deceased employee's checks and handled the family's finances. She stated that they barely had enough money to support themselves. She stated that she gave the deceased employee money for

2. All statutory references herein are to R.S.Mo. 1990 unless otherwise noted.

gasoline and cigarettes. She stated that the deceased employee did not have any money to support Katina and that the only things he gave to her were Christmas, birthday, and Valentine's Day gifts. Such gifts do not constitute support.

The ALJ also awarded Jimmie the sum of $2,000, the statutory limit at the time of death, for burial expenses. Universal thereafter tendered that amount to Jimmie but he refused it on the basis that he was entitled to reimbursement for the full $4,000 he spent, due to the fact that, at the time Universal finally paid burial expenses, the statutory limit for reimbursement of such expenses was $5,000. The Commission affirmed the denial of compensation to Katina, affirmed the award of $2,000 in burial expenses to Mr. Stillwell, and provided that the award should "bear interest as provided by law." Katina and Mr. Stillwell appeal.

## II. STANDARD OF REVIEW

In *Davis v. Research Medical Center*, 903 S.W.2d 557 (Mo.App. en banc 1995), this Court noted that we undertake a two-step process in reviewing findings of fact made by the Commission:

In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient, competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence.

*Id.* at 571.

*Davis* also explained that the "appellate court must give considerable weight to the credibility findings made by those before whom the witnesses gave oral testimony 'in determining where the weight of the evidence lies.'" *Id.* at 567 (citations omitted). *Davis* further explained that the principle of due deference is applicable to:

situations where the evidence to be reviewed is evenly balanced, or very close to being evenly balanced, and the reviewing tribunal is in grave doubt as to the proper decision to make. In such a situation the credibility of witnesses becomes an extremely important factor in determining where the actual truth lies. Experience, Wisdom, and Justice all combine to suggest in this situation that those before whom the witnesses gave oral testimony were in a far better position to determine the credibility of the witnesses and the weight to be given to their testimony than any reviewing tribunal could be, because the reviewing tribunal sees only the cold record and does not have an opportunity to judge the witnesses who gave the testimony.

*Id.* at 568 (citations omitted).[3]

As to questions of law, *Davis* explained that "[f]indings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous." *Id.* at 571.

## III. THE COMMISSION DID NOT ERR IN FINDING KATINA WAS NOT A DEPENDENT OR NATURAL CHILD OF SHANE STILLWELL

 Katina contends that the Commission erred in determining that she was not entitled to death benefits because she was not a dependent of Shane.

Pursuant to Section 287.240 of the Workers' Compensation Law, "dependents" of an employee otherwise covered by workers' compensation are entitled to benefits. An individual (1) can conclusively be a depen-

---

3. Here, the Commission affirmed the determination of the ALJ. We therefore will refer only to the Commission's determination. We need not address the standard of review where the determinations of the ALJ and the Commission differ.

dent, or (2) may be considered to be a partial or total dependent based on the facts presented as follows:

(4) The word "dependent" as used in this chapter shall be construed to mean a relative by blood or marriage of a deceased employee, who is actually dependent for support, in whole or in part, upon his or her wages at the time of injury. The following persons shall be conclusively presumed to be totally dependent for support upon a deceased employee . . .

(b) A natural, posthumous, or adopted child or children, whether legitimate or illegitimate, under the age of eighteen years. . . . In all other cases questions of total or partial dependency shall be determined in accordance with the facts at the time of the injury, and in such other cases if there is more than one person wholly dependent the death benefit shall be divided equally among them.

§ 287.240(4)(b).

## A. Appellant is Not Conclusively Presumed to be a Dependent.

Katina initially contends that she is conclusively entitled to workers' compensation benefits as the child of Shane. The Commission found that Katina was not conclusively entitled to death benefits because she was not the child of Shane after her adoption by the Stillwells prior to Shane's death.

While neither party cites the Missouri Adoption Code, it provides guidance on this issue. Section 453.090.1 of the Adoption Code, entitled "Consequences of Adoption," provides that "[w]hen a child is adopted in accordance with the provisions of this chapter, all legal relationships and all rights and duties between such child and his natural parents . . . shall cease and determine." Section 453.090.3 further specifically provides that the adopted child "shall be capable of inheriting from, and as the child of, his parent or parents by adoption as fully as though born to him or them in lawful wedlock." It does not provide, however, that the adopted child has the right to inherit from his or her natural parents.

The Court in Commerce Trust Co. v. Duden, 523 S.W.2d 97 (Mo.App.1975), construed this section in a similar factual setting. In Commerce the issue was whether a child who had been adopted away could inherit under a will of the natural father that left the estate to all "natural or adopted" children. Commerce held that the child was not still considered a "natural child" and thus was not entitled to inherit under the will due to the fact of his adoption out of the family. In so holding, Commerce explained that the "adopted child is taken out of the blood stream of its natural parents and placed, by the operation of law, in the blood stream of its adopting parents. . . ." Id. at 100–01.

Counsel for Katina asserted at oral argument that, although Katina would not have been entitled to inherit under the Adoption Code provisions just cited, she should nonetheless be entitled to recover workers' compensation benefits because the statutes governing workers' compensation are liberally construed in favor of the insured. While this principle is valid, it does not provide a basis to interpret the statute in the manner suggested by Katina. Once she was adopted by Jimmy Dean and Peggy Sue Stillwell, Katina simply was no longer a natural child of Shane in a legal sense, for he specifically gave up all of his parental rights as to her. Her adoptive parents were now her parents, and Shane became her brother. Katina therefore was not conclusively entitled to death benefits on account of Shane's death under Section 287.240(4)(b).

## B. The Finding That Katina Was Not An Actual Dependent of Shane Was Not Against the Overwhelming Weight of the Evidence

Katina would nonetheless be entitled to benefits under Section 287.240(4)(a) if she could show that she was "actually dependent for support, in whole or in part," upon Shane's wages at the time of the injury. While it is not necessary to show that the employee was "legally liable" for the support of the claimant, it must be shown that the claimant was "actually" dependent on the employee. Masters v. Southwestern Greyhound Lines, Inc., 205 S.W.2d 882, 885 (Mo. App.1947). As Ash v. Modern Sand & Grav-

el Co., 234 Mo.App. 1195, 122 S.W.2d 45 (1938), explained:

> The word "dependent" ordinarily means the need of aid or support; not self-sustaining. A dependent person is one who has not the means of his own to support himself. A total dependent is one who has no means whatever to support himself. A partial dependent is one who has some means, but not sufficient for his support.

Id. 122 S.W.2d at 48.

Here, it is indisputable that Katina was not in fact totally dependent on Shane, for her adoptive parents provided her with most of her support and claimed her as a dependent. Katina also claims, however, that she was a partial dependent of Shane because Shane gave her either $30 per week or $120 to $150 per month, as well as food, clothing and gifts. If this were the only evidence, and if it were believed, it may have supported a finding of partial dependency at least in the minimum statutory amount.

The Stillwells also testified, however, that they were responsible for Katina's basic needs and that the money and other items supplied by Shane were not needed and were not provided on a regular basis. In addition, Kathleen testified that, while occasional gifts of clothing were given to Katina, Shane did not make monetary contributions on a regular basis towards Katina's support. Kathleen said that substantially all of Shane's earnings went to support her and her two children, not Katina. She further testified that the items which Shane did give to Katina were simply occasional gifts of clothing, money and other items, and did not constitute a regular contribution toward Katina's support.

The Commission was free to, and did, believe the latter testimony. The Commission determined that Kathleen's testimony was more credible, based on the fact that she was in charge of the family finances and thus would have known if Shane was providing the alleged support, and on the fact that Shane was the sole financial support for himself, Kathleen and her two children. This evidence was found to be more compelling than the Stillwells' testimony about how much support was given and than the Stillwells' list of items they said Shane gave to Katina.[4]

On very similar facts, the Missouri Supreme Court affirmed a finding of lack of dependency in Pittman v. Scullin Steel Co., 289 S.W.2d 57 (Mo.1956). In Pittman, there was evidence that the employee sent the alleged dependent regular payments, but other evidence indicated that the employee had simply sent her occasional gifts of money and clothing, including special gifts on holidays. The Missouri Supreme Court held that these facts supported the Commission's decision that partial dependency was not established, for the Commission could have believed that "there was no set amount contributed periodically and there is no evidence that appellant ... relied on receiving any support from the deceased employee." Id. at 63. In so holding, Pittman explained that:

> [t]he fact that a person, under no legal obligation to support another, may make occasional gifts does not necessarily require a finding that the recipient of the gifts was partially dependent upon the donor.

Id.

Here, as in Pittman, the Commission determined that the money, clothes and other items contributed constituted occasional gifts rather than necessary support. The Commission was in a better position than are we to determine the credibility of the witnesses and the weight to be given their testimony.

---

4. Katina contends in her brief that the Commission determined that, as a matter of law, it could not consider the amount of support Shane gave Katina based on the list of items prepared by Peggy Sue simply because the list was prepared after the claim was filed and because the Stillwells had no receipts for the items on the list. Such a determination as a matter of law would be erroneous. The Stillwells explained that a fire had occurred which destroyed the items themselves and evidence of them, and that they had no reason to make out a list of items until claim procedures required them to do so. The list was based on personal knowledge, and certainly was entitled to consideration in these circumstances. We do not believe, however, that the Commission held it could not consider the list as a matter of law. Rather, it appears that it adopted the ALJ's finding that the nature of the list and the lack of other proof went to the credibility of the evidence presented by the Stillwells regarding the amount of support that Katina received from Shane.

We conclude that there was substantial evidence to support the findings of the Commission.

## IV. BURIAL EXPENSES WERE LIMITED BY THE STATUTE IN EFFECT AT THE TIME OF BURIAL

### A. The Award of Burial Expenses Below

Under the Workers' Compensation Law, an employer is liable for payment of the employee's reasonable burial expenses up to a certain maximum amount for work-related deaths. § 287.240.1. Jimmie Dean Stillwell fully paid a $3,980.36 invoice from Royer Funeral Home for various itemized expenses related to Shane's funeral and burial.

Section 287.240.1 states that:

In all cases where the employer admits or does not deny liability for the burial expense, it shall be paid within 30 days after written notice.

Shortly after the funeral on January 29, 1990, Mr. Stillwell submitted the invoice to Universal as a request for payment and reimbursement of the funeral and burial expenses. On March 1, 1990, Universal, through its insurer, denied the request for payment and reimbursement of the funeral home invoice but offered no explanation for its denial.

As of the time of the hearing in June 1994, Universal still had not paid Mr. Stillwell for the burial expenses. At the hearing, Universal presented no defense to liability for burial expenses and offered no explanation for its failure to pay the burial expenses other than its earlier letter simply denying all claims arising from Shane's death.

Section 287.240.1 as it existed at the time of the accident in 1990 provided that "the employer shall pay direct to the person furnishing the same the reasonable expense of the burial of the deceased employee *not exceeding two thousand dollars.*" (emphasis added). In 1993, the statutory maximum for reimbursement for burial expenses was increased to $5,000. In order to obtain full reimbursement for funeral and burial expenses, Mr. Stillwell contended that the amended statute increasing the monetary limit for burial expenses should be applied retrospectively in this case because the insurer had not yet paid the burial expenses at the time the Legislature raised the limit to $5,000.

The ALJ and Commission did not agree. They awarded Mr. Stillwell $2,000 for burial expenses in accordance with the version of Section 287.240.1 in effect at the time of the accident. Finally, at that point, Universal tendered payment of $2,000. Mr. Stillwell declined to accept the tender. Instead, he appealed, arguing that because of Universal's delay in payment he was entitled to full reimbursement of the $3,980.36 he paid plus a separate $100 charge he paid for preparation of the grave plus costs under Section 287.560.

### B. The Commission Correctly Refused to Apply the New Limit on Burial Expenses Retroactively

■ It is well settled that, unless a statute clearly indicates that it is to be applied retrospectively, Article I, Section 13 of the Missouri Constitution prohibits its retroactive application unless the statute is merely procedural or remedial rather than substantive in effect. *Fletcher v. Second Injury Fund,* 922 S.W.2d 402 (Mo.App.1996).

There is nothing in the language of Section 287.240.1 which clearly manifests an intent that the amendment increasing the amount of burial expense reimbursement be given retrospective application. Thus, the question becomes whether the statutory increase in the extent of an employer's liability for burial expenses constituted a change in the employer's substantive or vested rights.

■ Mr. Stillwell argues that the change is procedural only and may be given retrospective application, citing *Croffoot v. Max German, Inc.,* 857 S.W.2d 435 (Mo.App.1993). We disagree. At issue in *Croffoot* was Section 287.160, a provision of the Workers' Compensation Law regarding accrual of prejudgment interest on unpaid benefits. The statute was interpreted by the Missouri Supreme Court in *Martin v. Mid–America Farm Lines, Inc.,* 769 S.W.2d 105, 112 (Mo. banc 1989), as permitting interest on unliqui-

dated claims, a result which contravened the established common law principle that interest does not accrue until the claim is liquidated. In the year following *Martin*, the Missouri Legislature amended Section 287.160 to disallow interest on unpaid weekly compensation benefits in contested cases until such a claim had been reduced to judgment.

*Croffoot* held that this change in the statute was remedial and could be applied retroactively because the disallowance of interest on unliquidated claims in contested cases affected only the measure of damages. *Id.* at 436. Because the amended statute merely reinstated the traditional rule prohibiting damages on unliquidated sums, *Croffoot* concluded that employees did not have a vested right to interest on unliquidated claims under the Act. *Id.*

We do not read *Croffoot* as holding that all amendments to statutes affecting the measure of damages must necessarily be characterized as remedial and procedural. As *Croffoot* points out, "merely to label certain consequences as substantive and others as procedural is not sufficient; notions of justice and fair play in a particular case are always germane." *Id. Croffoot* itself recognized that a legislative change to a statutory ceiling on damages in a particular type of case cannot be applied retroactively since the damages ceiling was enacted to protect defendants during its operation. *Id.*

Much more on point is *State ex rel. St. Louis–San Francisco Railway Company v. Buder*, 515 S.W.2d 409 (Mo. banc 1974). *Buder* reviewed the application of a change in the statute that set a $50,000 cap on damages which could be awarded in a wrongful death action. Prior to trial, this limit was removed by the Legislature. The Court held that the $50,000 limit in effect at the time of the accident still applied, stating that:

> It is best to keep in mind that the underlying repugnance to the retrospective application of laws is that an act or transaction, to which certain legal effects were ascribed at the time they transpired, should not, without cogent reasons, thereafter be subject to a different set of effects which alter the rights and liabilities of the parties thereto.

*Id.* at 411. The statutory limitation on damages had served to protect the defendants from verdicts in excess of the limit. The Court stated that the "decision to eliminate this protection cannot justly be applied to acts which occurred when the protection was afforded." *Id.*[5]

Universal similarly possessed a vested right under Section 287.240.1 that its liability for burial expenses could not exceed $2,000. The 1993 amendment of Section 287.240.1 affects the substantive rights of Universal and cannot be regarded as merely procedural. The Missouri Constitution prohibits us from giving the statute retrospective application. Therefore, we affirm the determination below that Mr. Stillwell's claim for burial expenses is subject to the $2,000 statutory limit for reimbursement of such expenses which was in effect at the time of the accident.

## V. COSTS AND PREJUDGMENT SHOULD HAVE BEEN AWARDED TO MR. STILLWELL

Mr. Stillwell also contends that Universal vexatiously and wrongfully denied payment of burial expenses for nearly five years. He asked the Commission to award costs under Section 287.560. That Section states in relevant part that:

> if the division or the commission determines that any proceedings have been brought, prosecuted or defended without reasonable ground, it may assess the whole cost of the proceedings upon the party who so brought, prosecuted or defended them.

The Commission affirmed the ALJ's award, which did not include an assessment of costs against Universal. The Commission did not itself award costs, or even address

---

5. *See also State ex rel. Webster v. Cornelius*, 729 S.W.2d 60, 66 (Mo.App.1987) (amended statute which allowed assessment of 10 percent fine for its violation was substantive and would not be applied retroactively); *Reinerd v. A.B. Chance Co.*, 800 S.W.2d 777 (Mo.App.1990) (denying the retroactive application of a revision to the workers' compensation statute which denied the employer credit for any payment made in excess of the initial 52–week healing period).

Mr. Stillwell's request for costs. Inasmuch as the statute says that costs may be awarded if the Commission determines that a claim has been defended without reasonable grounds, we must assume that the Commission believed that the employer did defend on reasonable grounds.[6]

This finding was not supported by competent and substantial evidence and is contrary to the overwhelming weight of the evidence. The record unequivocally demonstrates that the employer has offered absolutely no ground, reasonable or otherwise, for its refusal to pay the $2,000 in burial benefits it clearly owed Mr. Stillwell. The record also reflects that no basis for such a refusal could be offered, for the statute is clear and the facts supporting the obligation are uncontested.

For these reasons, we remand to the Commission with directions that it award the entire cost of the proceeding to Mr. Stillwell. While there are no reported cases under Section 287.560 directing the Commission how to determine these costs, it may be guided by the reference in other portions of Section 287.560 to costs of depositions, transcripts, subpoenas, and the like. It may also be guided by the costs available in civil actions under Section 514.060 and by its own past practice in this regard.

As this case must be remanded, we further address the Commission's holding that "[a]ny past due compensation shall bear interest as provided by law." As the only compensation which had not been paid was the $2,000 in burial expenses owed to Mr. Stillwell, we presume that this is the compensation to which the Commission referred.[7] Although on appeal neither party has complained about this award of interest, we believe it will simplify issues on remand if we clarify what interest is provided by law on these burial expenses in the particular circumstances of this case.

While the employer refused to pay the $2,000 of burial expenses owed by it prior to the award of such expenses by the ALJ, it appears that it did tender such expenses following the ALJ's award. Mr. Stillwell refused to accept the $2,000, however, apparently believing that he was entitled to approximately $4,000 and that to accept the $2,000 would prejudice this claim on appeal.

Mr. Stillwell's fear is unfounded, for in *Martin v. Mid–America Farm Lines Inc.*, 769 S.W.2d 105 (Mo. banc 1989), the Missouri Supreme Court stated that an employer's tender of the amount conceded to be due under the law stops the running of interest, and the claimant may "accept this tender without prejudicing any right of appeal." *Id.* at 112 n. 13. Thus, on remand, the Commission should award interest on the $2,000 commencing 30 days after Mr. Stillwell submitted his request for reimbursement of burial expenses up to the date of tender, and again from the point of remand until the amount due is paid.

As will be noted, this award of interest includes prejudgment interest. This is proper, for the prohibition on prejudgment interest contained in the 1990 revision to Section 287.160 applies only to weekly benefit payments, not to burial expenses. Thus, we look to the general interest statute, Section 408.020, to determine whether interest is properly awarded.

Section 408.020 provides for the award of interest on liquidated claims whether they arise by operation of law or by

---

6. The only other reason for its silence would be that it simply forgot to reach this issue. We will not assume such a failure on the part of the Commission. The employer suggests that costs may not have been awarded because the request for them was untimely. We disagree. The statute clearly says that either the ALJ *or the Commission* may award costs where the statutory requirement therefor is met. While Mr. Stillwell did not list costs as an issue at the time of the hearing, he did timely ask the Commission to award such costs. The Commission was therefore obligated to determine that issue.

7. The courts have previously recognized that reimbursement of certain expenses can be considered compensation under the relevant statutes. *See Kramer v. Labor & Indus. Rel. Comm'n,* 799 S.W.2d 142, 145 (Mo.App.1990) (interest awarded on medical bills); *Akers v. Harrison/Williams Fixtures, Inc.,* 799 S.W.2d 136, 138 (Mo.App. 1990) (interest proper on all forms of compensation prior to revision of statute). Burial expenses are also properly subject to interest as provided by law.

**458**

contract. *Hammons v. Eisert,* 745 S.W.2d 253, 259 (Mo.App.1988).[8] The $2,000 burial expense was liquidated, for it was readily ascertainable by computation with reference to the invoice from the funeral home. *See Wulfing v. Kansas City Southern Industries Inc.,* 842 S.W.2d 133, 160 (Mo.App.1992). The mere fact that the employer contested the claim did not make it unliquidated. *Huffstutter v. Michigan Mut. Insur. Co.,* 778 S.W.2d 391, 395 (Mo.App.1989).[9] Indeed, an "award of prejudgment interest in a case where § 408.020 is applicable is not a matter of court discretion; it is compelled." *Id.*[10]

For these reasons, we affirm the Commission's denial of death benefits to Katina Stillwell and the Commission's award of $2,000 in burial expenses to Mr. Jimmie Dean Stillwell. We further remand this matter to the Commission with directions that it determine the costs and interest due to Mr. Stillwell on the award of burial expenses in accordance with this opinion.

SPINDEN, J., concurs.

BERREY, J., not participating in the decision in this case due to illness.

---

**8.** *See also Coleman v. Kansas City,* 353 Mo. 150, 182 S.W.2d 74, 78 (1944) (interest allowed under predecessor statute on claim for wrongfully withheld salary); *Brink v. Kansas City,* 358 Mo. 845, 217 S.W.2d 507 (1949) (interest allowed on claim for money had and received for refund of void tax payments).

**9.** "The general rule is that in the absence of an agreement to pay interest, the law will imply damages for not discharging a debt when it ought to be paid." *Wulfing,* 842 S.W.2d at 160. *See also* 47 C.J.S. *Interest and Usury* § 28 at 76 (interest allowable even in absence of contract or

statute where there has been unreasonable and vexatious delay in payment of principal obligation).

**10.** *See also 21 West, Inc. v. Meadowgreen Trails, Inc.,* 913 S.W.2d 858, 871–72 (Mo.App.1995) (prejudgment interest must be awarded on liquidated claims arising at law); *Newburger, Loeb & Co. Inc. v. Gross,* 611 F.2d 423, 433–34 (2d Cir.1979) (appellate court *sua sponte* awarded prejudgment interest because such award was mandated by the interests of justice).