EASTERN MISSOURI LABORERS'
DISTRICT COUNCIL, et al.,
Plaintiffs/Appellants,

v.

CITY OF ST. LOUIS, et al.,
Defendants/Respondents.

No. ED 75723.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 19, 1999.

Bruce S. Feldacker, Feldacker & Durbin, Clayton, Shulamith Simon, Garvin & Maloney, Clayton, for appellants.

James R. Hartung, City Counselor, St. Louis, Robert B. Hoemeke,Lewis, Rice & Fingersh, John H. Goffstein, Bartley, Goffstein, Bollato & Lange, St. Louis, for respondents.

SULLIVAN, Presiding Judge.

Appellants challenge the City of St. Louis' ("City") interpretation of the City Plumbing Code ("Code") and the constitutionality of the ordinance as interpreted. Appellants appeal from the following judgments: (1) a judgment declaring that the Code allows the City to require private contractors to secure a plumbing permit before installing public water mains; and (2) a summary judgment holding that the City's interpretation of the Code does not violate the equal protection and due process clauses of the U.S. and Missouri Constitutions. Affirmed.

City Ordinance No. 60826 ("Ordinance") adopts the National Standard Plumbing Code, 1987 edition, as the City Plumbing Code. Pursuant to the City Charter, the City Water Division ("Division"), a division of the Department of Public Utilities, has responsibility for water main installation in the City. Historically, the Division has contracted out longer water main installation through the Board of Public Service ("Board"). The Board requires plumbing licenses for private contractors performing this work. Pursuant to the City Charter, the Board supervises and controls the Department of Public Utilities and has the authority to control and conduct construction work undertaken by the City and to supervise work in which the City is interested.

Appellants' point one on appeal argues that the circuit court erred in concluding that the Code allows the City to require plumbing licenses for private contractors installing public water mains. Appellants contend that the public water main installation at issue does not fall within the scope or language of the Code and is within the jurisdiction of the Division. Appellants further contend that allowing the Code Official to impose such a requirement constitutes an unlawful delegation of legislative authority.

■ We "will affirm the decision of the circuit court in declaratory judgment cases unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Nylon v. Mo. Bd. Of Probation and Parole*, 940 S.W.2d 3, 5 (Mo.App. W.D.1997).

■ Statute interpretation is a question of law which is "reserved for the independent judgment of the reviewing court." *City of Cabool v. Mo. State Bd. of Mediation*, 689 S.W.2d 51, 54 (Mo. banc 1985). Remedial statutes should be construed liberally. *State ex rel. Ford v. Wenskay*, 824 S.W.2d 99, 100 (Mo.App. E.D.1992). A remedial statute is one "enacted for the protection of life and property...." *Id.* quoting *City of St. Louis v. Carpenter*, 341 S.W.2d 786, 788 (Mo.1961). These rules are equally applicable to municipal ordinances. Here, the purpose of the Code is "to insure public safety, health and welfare insofar as they are affected by the installation and maintenance of plumbing." Thus, the Code is remedial and should be construed liberally. Further, the Code itself expressly provides that it "shall be construed liberally and justly to secure the proper installation of systems for furnishing potable water...."

■ The scope of the Code is defined as: "The design and installation of plumb-

ing systems, including sanitary and storm drainage, sanitary facilities, water supplies, storm water and sewage disposal in buildings, shall comply with the requirements of this code." Appellants argue that the words following "including" limit the scope of the term "plumbing systems" to only those systems "in buildings." However, given the use and the placement of commas in the sentence, we find the words to be examples of specific applicable systems rather than an all-inclusive definition of "plumbing systems."

■ Further support for our finding is the separate definition of "plumbing system" in the National Code. The definition includes "water supply and distribution pipes...." The National Code also defines public water main as "a water supply pipe for public use controlled by public authority." Thus, a "plumbing system" includes water supply pipes which include public water mains. Therefore, after applying the required liberal construction to the expressed scope of the Code, we hold plumbing systems include public water mains.

■ Additionally, "the ultimate guide in construing an ambiguous statute is the intent of the legislature." *Spradlin v. City of Fulton*, 982 S.W.2d 255, 258 (Mo. banc 1998). The purpose of the Code is "to insure public safety, health and welfare insofar as they are affected by the installation and maintenance of plumbing" and "to secure the proper installation of systems for furnishing potable water." The National Code defines plumbing to include the installation of all piping in connection with public or private water supply systems. Public water mains are necessarily "in connection with" the public water supply system. Thus, this intent further supports the inclusion of public water main installation within the scope of the Code.

■ Moreover, Paragraph P–1.2 of the Code permits a Code Official, specifically the Plumbing Inspection Supervisor, to implement "any plumbing requirement" for work not covered by the Code when it is "essential" for safety. As discussed above, "plumbing" includes public water main installation. Given the integral relationship between water mains and a building's plumbing, a Code Official may reasonably determine that requiring private contractors to have a plumbing license to perform water main installation is essential for safety. Pursuant to Paragraph P–9.4 of the Code, a Code Official has the authority "to adopt and promulgate rules and regulations to interpret and implement provisions of this code to secure [its] intent" and "as necessary in the interest of public health, safety and general welfare."

■ Allowing a Code Official to impose such a requirement does not constitute an unlawful delegation of legislative authority. The authority given to a Code Official is not unlimited. It is guided by the standard of "essential" for safety. An ordinance that requires discretion to protect public health and safety need not spell out standards in great detail. *Vaughn v. Ems*, 744 S.W.2d 542, 548 (Mo.App. E.D. 1988).

Accordingly, the circuit court did not err in concluding that the Code allows the City to require plumbing licenses for private contractors installing water mains within the public streets or public easements up to the point of connection of a water main to the water service line connected to a building. Because the circuit court did not erroneously apply the law, the declaratory judgment is affirmed.

■ Appellants' point two argues that the circuit court erred in concluding that the City's interpretation of the Code does not violate the equal protection and due process clauses of the U.S. and Missouri Constitutions. Appellate review of summary judgment is essentially de novo because "[t]he propriety of summary judgment is purely an issue of law." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

Ordinances "regulating the business of plumbing and the licensing of plumbers are exercises of the [city's] police power in the area of the public health and safety." *Stine v. Kansas City*, 458 S.W.2d 601, 607 (Mo.App. W.D.1970). "If reasonable minds might differ as to whether a particular ordinance has a substantial relationship to the protection of the general health, safety, or welfare of the public, then the issue must be decided in favor of the ordinance." *Bezayiff v. City of St. Louis*, 963 S.W.2d 225, 229 (Mo.App. E.D. 1997). Further, an ordinance enacted pursuant to a city's police power is presumed constitutional, and the party challenging the ordinance has the burden to prove it unconstitutional by negating "every conceivable basis that might support it." *Id.*

Because neither a suspect class nor a fundamental right is at issue here, to be constitutional, the classification created by the City's interpretation of the Code need only be rationally related to a legitimate government interest. *See Burgdorf v. Bd. of Police Comm'rs*, 936 S.W.2d 227, 232 (Mo.App. E.D.1996). Under this rational basis analysis, the party attacking the classification has the burden "to show it does not rest upon any reasonable basis, and is purely arbitrary." *Id.* at 233. Further, "if any state of facts can be conceived to justify a classification, it will be sustained." *Id.* Appellants did not meet this burden.

The interpretation and subsequent classification is rationally related to the protection of public health and safety for several reasons. First, it ensures a minimum level of competency for private contractors performing work that can affect public health and safety. Although others may be capable of performing the work, when dealing with public health and safety, it is not unreasonable for the City to require a plumbing license for private contractors not under the direct supervision of the City while the work is being performed.

Second, although the City does not require its employees to have a plumbing license to perform similar work, other safeguards are implemented for protection. City employees receive training pertaining to water main installation and are supervised by other City personnel while the work is being performed (e.g. a superintendent, a foreman, or a "pipeman"). This training and supervision of City employees substitutes for the license requirement as a means of monitoring worker qualifications and thereby protecting public health and safety. Thus, the requirement is rationally related to the protection of public health and safety.

Accordingly, the circuit court did not err in concluding that the City's interpretation of the Code does not violate the equal protection and due process clauses of the U.S. and Missouri Constitutions. We affirm the summary and declaratory judgments.

KAROHL, J. and RICHARD B. TEITELMAN, J., concur.