**Clarence COOK, et al., Respondents,**

v.

**Joseph NEWMAN, M.D.,
et al., Appellants,**

**Alan Buchele M.D. and Alan Buchele
M.D., P.C., Defendants.**

**No. WD 62634.**

Missouri Court of Appeals,
Western District,
En Banc.

July 27, 2004.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 31, 2004.

Application for Transfer Denied
Sept. 28, 2004.

Charles H. Stitt, Kansas City, MO, for Appellant.

Michelle Boehm O'Neal, Joplin, MO, for Respondents.

Before JOSEPH M. ELLIS, C.J., HAROLD L. LOWENSTEIN, ROBERT G. ULRICH, PAUL M. SPINDEN, JAMES M. SMART, JR., EDWIN H. SMITH, VICTOR HOWARD, THOMAS H. NEWTON, RONALD R. HOLLIGER, LISA WHITE HARDWICK, JJ., and WILLIAM E. TURNAGE, SR. J.

ROBERT G. ULRICH, Judge.

Joseph Newman, M.D., Walter Dandridge, Jr., M.D., and Joplin Surgical Associates, Inc. ("JSA")(collectively "Appellants") appeal the trial court's amended judgment entered upon jury verdict in favor of Clarence Cook, Clarence Cook, Jr.,

1. All statutory references are to RSMo 2000 unless otherwise indicated.

2. Respondents also sued Alan Buchele, M.D. and Alan Buchele, M.D., P.C. The jury ren-

and Eugenia White (collectively "Respondents") in the amount of $7,281,886.30 in this medical malpractice action. This appeal involves section 538.210,[1] which limits the recovery for noneconomic damages from a defendant ("cap"). Appellants claim that the trial court erred in calculating the number of statutory caps on noneconomic damages to be applied in the case. Appellants also claim that the trial court erred in applying the cap amount in effect at the time of trial rather than the cap amount in effect at the time of the occurrence. The judgment of the trial court is reversed, and the case is remanded with directions.

### Facts

In July 2000, Respondents filed this medical malpractice action against Appellants for the wrongful death of Ruth Cook, their spouse and mother. They alleged that Ms. Cook underwent a laparoscopic cholecystectomy on April 6, 1998, and that as a result of Dr. Newman's and Dr. Dandridge's negligent care of her, she developed symptoms of peritonitis and died on June 17, 1998.[2]

The verdict director against Dr. Newman and JSA directed the jury to find for Respondents if it believed:

First, either:

defendant Joseph Newman, M.D. injured Ruth Cook's duodenum while performing a laparoscopic cholecystectomy on April 6, 1998, or,

defendant Joseph Newman, M.D. failed to inspect and test for injury to Ruth Cook's duodenum during the laparoscopic cholecystectomy on April 6, 1998, or,

dered a verdict in favor of these defendants, and judgment was entered in their behalf; therefore, they are not parties to this appeal.

defendant Joseph Newman, M.D. failed to timely repair Ruth Cook's duodenum after the laparoscopic cholecystectomy on April 6, 1998, or

defendant Joseph Newman, M.D. failed to adequately repair Ruth Cook's duodenum during the surgery performed on April 7, 1998, or

defendant Joseph Newman, M.D. failed to order diagnostic testing to determine the adequacy of the April 7, 1998 repair, or,

defendant Joseph Newman, M.D. failed to reoperate on Ruth Cook after April 7, 1998.

Furthermore, to return a verdict for Respondents, the jury was required to find that Dr. Newman was negligent in any one or more of the respects submitted and that such negligence directly caused or directly contributed to cause the death of Ruth Cook.

The verdict director against Dr. Dandridge and JSA directed the jury to find for Respondents if it believed:

First, defendant Walter C. Dandridge, M.D. failed to test or reoperate or recommend reoperation or testing to determine the adequacy of the April 7, 1998 repair on April 16th, or April 25th, or April 26th, or May 14th, or May 15th, or June 2nd, or June 9th, or June 14th, 1998, when he provided care to Ruth Cook.

Furthermore, to return a verdict for Respondents, the jury was required to find that Dr. Dandridge was negligent in any one or more of the respects submitted and that such negligence directly caused or directly contributed to cause the death of Ruth Cook.

The jury returned verdicts in favor of Respondents on the claim against Dr. Newman and JSA and on the claim against Dr. Dandridge and JSA. It awarded Respondents past economic damages in the amount of $717,886.31 and past and future noneconomic damages in the amount of $7,282,113.69 for total damages in the amount of $8,000,000. The trial court entered judgment in favor of Respondents in accordance with the jury's verdict.

Thereafter, Appellants filed their motion for judgment notwithstanding the verdict or, in the alternative, for new trial or, in the alternative, to modify the judgment. In their post-trial motion, Appellants contended, in pertinent part, that the judgment amount should be reduced to $1,230,886.31 to reflect the sum of the economic damages assessed by the jury together with one cap amount for noneconomic damages pursuant to section 538.210. They argued that the appropriate maximum awarded for noneconomic damages should be calculated on the basis that the three persons joining in the wrongful death action constitute one plaintiff; only one occurrence was determined by the jury, that being the death of Ruth Cook; Dr. Newman, Dr. Dandridge, and JSA constitute one defendant as the term "defendant" is defined in section 538.210; and the applicable cap amount for events that occurred in 1998 is $513,000. Appellants attached to their post-trial motion an affidavit of Dr. Newman stating that at all times referenced in the petition, JSA was a Missouri corporation; at all such times, JSA was engaged in the business of providing health care services, by and through licensed medical practitioners (including Dr. Newman and Dr. Dandridge); at all times from April 6, 1998, Dr. Newman and Dr. Dandridge were employed by JSA; and at all times from April 6, 1998, Dr. Newman and Dr. Dandridge were insured under a professional liability insurance policy issued to JSA.

Following a hearing on the post-trial motion, the trial court entered an order

declaring that each of the three persons joining in the wrongful death action constitute a plaintiff as that term is used in section 538.210; cap amounts shall be awarded for two occurrences because the jury returned verdicts against Dr. Newman and JSA and against Dr. Dandridge and JSA for separate and distinct acts of negligence; JSA, Dr. Newman, and Dr. Dandridge constitute separate defendants under section 538.210; and the applicable cap amount is $547,000, the amount in effect at the time of the verdict, which was greater than the cap amount at the time of the occurrences for which suit was filed. The court, therefore, concluded that Respondents shall collect noneconomic damages equal to twelve cap amounts. The same day, the trial court entered its amended judgment reducing noneconomic damages to $6,564,000 for total damages in the amount of $7,281,886.30. It also allocated the proceeds of the judgment after attorneys' fees and expenses at 50% to Clarence Cook, 25% to Clarence Cook, Jr., and 25% to Eugenia White. This appeal by Drs. Newman and Dandridge and JSA followed.

### Standard of Review

 Appellants' appeal asserts that the trial court misinterpreted and misapplied section 538.210. The interpretation of a statute is a question of law; therefore, appellate review is de novo. *Knob Noster Educ. v. Knob Noster R–VIII Sch. Dist.,* 101 S.W.3d 356, 360 (Mo.App. W.D.2003). The primary rule in statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning. *Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240, 251 (Mo. banc 2003), *overruled on other grounds by Hampton v. Big*

*Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003). When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous. *Stotts v. Progressive Classic Ins. Co.,* 118 S.W.3d 655, 664 (Mo.App. W.D.2003)(*quoting Ozark Wholesale Beverage Co. v. Supervisor of Liquor Control,* 80 S.W.3d 491, 497 (Mo.App. W.D.2002)). Ambiguity means "duplicity, indistinctness or uncertainty of meaning of an expression." *J.B. Vending Co. v. Dir. of Revenue,* 54 S.W.3d 183, 188 (Mo. banc 2001)(quoting *Lehr v. Collier,* 909 S.W.2d 717, 721 (Mo.App. S.D.1995)). "The issue is not whether a particular word in a statute, considered in isolation, is ambiguous, but whether the statute itself is ambiguous." *Id.* at 187. Thus, the meaning of a particular word must be considered in the context of the entire statute in which it appears. *Id.* Only when a statute is ambiguous can the rules of statutory construction be applied. *Stotts,* 118 S.W.3d at 664 (quoting *Ozark Wholesale Beverage,* 80 S.W.3d at 497). "In construing an ambiguous statute, the ultimate guide is the intent of the legislature." *Long v. Interstate Ready–Mix, L.L.C.,* 83 S.W.3d 571, 577 (Mo.App. W.D.2002)(quoting *Lincoln Indus., Inc. v. Dir. of Revenue,* 51 S.W.3d 462, 465 (Mo. banc 2001)).

### Plaintiffs

 In the first point addressed in this appeal,[3] Appellants claim that the trial court erred in determining that Clarence Cook, Clarence Cook, Jr., and Eugenia White each constitute a plaintiff for purposes of applying the statutory cap for noneconomic damages under section 538.210. They contend that all the wrongful death claim beneficiaries constitute a

---

**3.** Appellants' points are not addressed in the order presented in their brief.

single plaintiff within the meaning of section 538.210.

Section 538.210.1 provides:

In any action against a health care provider for damages for personal injury or death arising out of the rendering of or the failure to render health care services, no plaintiff shall recover more than three hundred fifty thousand dollars per occurrence for noneconomic damages from any one defendant as defendant is defined in subsection 2 of this section.

Chapter 538 does not, however, define the term "plaintiff." Respondents argue that the term should, therefore, be construed according to its plain and ordinary meaning citing *Wright v. Barr*, 62 S.W.3d 509, 536 (Mo.App. W.D.2001).

In *Wright*, Virginia Wright filed a medical malpractice action against a physician and his cardiology practice after the physician's alleged negligent treatment of her atrial fibrillation causing her to suffer a stroke. *Id.* at 515. Her husband sued for loss of consortium. *Id.* The jury returned a verdict in favor of the Wrights. *Id.* at 523. One issue on appeal was the number of plaintiffs for purposes of the statutory noneconomic damages cap, section 538.210. The physician and cardiology practice urged that because Mr. Wright's consortium claim was derivative of Mrs. Wright's claim, the Wrights collectively constituted one plaintiff under section 538.210. *Id.* at 535.

This court found that the term "plaintiff" was unambiguous, meaning a person who brings a lawsuit or a party who complains or sues in a civil action; therefore, looking for the definition of "plaintiff" beyond the plain and ordinary meaning of the statute was unnecessary. *Id.* at 536. Because Mr. Wright's claim of loss of consortium was a separate personal injury claim from his wife's negligence claim, this

court found that Mr. Wright was a second plaintiff. *Id.* at 537. This case, however, is distinguishable from *Wright*. Unlike *Wright*, the underlying action in this case is a wrongful death action. Under the wrongful death statute, the surviving spouse, children, parents, or others named in the statute may sue for damages for the wrongful death of the decedent. § 537.080.1. Only one action, however, may be brought under section 537.080 against any one defendant for the death of any one person. § 537.080.2. Thus, the term "plaintiff" in section 538.210 is ambiguous when considered in the context of a wrongful death action.

Only when a statute's language is ambiguous or uncertain or if its plain meaning would lead to an illogical result will extrinsic matters, such as the statute's history, surrounding circumstances and objectives to be accomplished through the statute, be considered. *Riordan v. Clark*, 67 S.W.3d 610, 613 (Mo.App. W.D.2001)(quoting *Riordan v. Clark*, 8 S.W.3d 182, 184 (Mo.App. W.D.1999)); *Wright*, 62 S.W.3d at 536. Accordingly, the legislature's intent in adopting section 538.210 is considered. The Supreme Court held in *Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503, 507 (Mo. banc 1991), that Chapter 538 is "a legislative response to the public concern over the increased cost of health care and the continued integrity of that system of essential services." With the enactment of section 538.210, which directs that "no plaintiff shall recover more than" a limited amount per occurrence for noneconomic damages, the legislature intended to impose a specific limitation on tort claims against health care providers to temper the high cost of health care. *Burns v. Elk River Ambulance, Inc.*, 55 S.W.3d 466, 486 (Mo.App. S.D.2001).

■■■■■ Additionally, a presumption exists that the legislature acts with the knowledge of statutes involving similar or related subject matters. *Id.* Presumably, it is also aware of the state of the law at the time it enacts a statute. *Id.* At the time Chapter 538 was enacted, the wrongful death statute identified those persons entitled to sue and recover damages for a wrongful death, namely the surviving spouse, children, parents, or others named in the statute. § 537.080.1. It provided, however, that "[o]nly one action may be brought under this section against any one defendant for the death of any one person." § 537.080.2. Thus, the wrongful death statute provided that any one plaintiff could settle the claim for damages or maintain such suit and recover such damages without joinder therein by any other person entitled to recover damages, § 537.095.1, and that a recovery by any one plaintiff shall be apportioned by the court according to the laws of descent or in proportion to the losses suffered by each person entitled to share in the proceeds. § 537.095.2. In interpreting these statutes, the Missouri Supreme Court has said, "The wrongful death statute creates but one indivisible cause of action which remains the same whether enforceable by the surviving spouse, by the minor child or children, or by the others named in the statute." *Nelms v. Bright*, 299 S.W.2d 483, 487 (Mo. banc 1957). Knowing that the wrongful death statute created an indivisible cause of action enforceable by one or more persons, the legislature chose not to increase the noneconomic damages cap where more than one person brings a wrongful death action.

Such was the analysis in *Burns v. Elk River Ambulance, Inc.*, 55 S.W.3d 466, 486–87 (Mo.App. S.D.2001), where the Southern District applied one statutory cap for noneconomic damages even though two people were entitled to recover for the wrongful death of the decedent, his mother and father. After discussing the legislature's intent in adopting various provisions of Chapter 538 and the wrongful death statute and case law interpreting it, the Southern District explained:

> If Plaintiff's argument [that two caps should have been applied] is accepted, a widow could sue for her husband's death and recover a separate cap for herself and each of the couple's six children. This interpretation does not further the legislative goal of harnessing increasing health care costs nor does it square with the legislature's awareness of the application of § 537.080 when chapter 538 was enacted.

*Id.*

In this case, even though Ms. Cook's surviving husband and two children are entitled to recover damages for her wrongful death, together they are considered one plaintiff for the purposes of section 538.210. The point is granted.[4]

**Occurrences**

■■■■ In the second point addressed in this appeal, Appellants claim that the trial

---

4. Appellants claim in another point on appeal that the trial court erred in failing to apportion the jury's award of damages among the three plaintiffs before reducing the jury's award in accordance with the cap statute. They contend that because the trial court allocated damages after it calculated the amount of noneconomic damages recoverable, the surviving children actually received a greater award, the amount of the statutory cap, than they were entitled to receive based on the court's allocation. Appellants' argument, however, is based on a finding that Ms. Cook's surviving husband and two children were each a plaintiff for purposes of section 538.210. As discussed in this point, however, such determination by the trial court is reversed; therefore, this point need not be addressed.

court erred in determining that each of the separate and distinct acts of negligence of Dr. Newman and Dr. Dandridge found by the jury constituted a distinct actionable occurrence for purposes of section 538.210. Again, section 538.210.1 provides:

In any action against a health care provider for damages for personal injury or death arising out of the rendering of or the failure to render health care services, no plaintiff shall recover more than three hundred fifty thousand dollars *per occurrence* for noneconomic damages from any one defendant as defendant is defined in subsection 2 of this section. (emphasis added).

Appellants contend that the term "occurrence" refers to the injurious consequences of acts, i.e. the wrongful death of Ruth Cook, rather than the acts themselves; therefore, the noneconomic damages maximum should have been calculated on the basis of a single occurrence.

The term "occurrence" as used in section 538.210.1 is not defined. And the meaning of "occurrence" as used in section 538.210.1 is not clear and unambiguous. *Scott v. SSM Healthcare St. Louis,* 70 S.W.3d 560, 570 (Mo.App. E.D.2002). The term could plausibly be interpreted as either the harm plaintiff has sustained or the act of medical negligence causing that harm. *Id.* The statutory meaning must, therefore, be construed with the aid of rules of construction. *Id.*

Appellant's contention that the term "occurrence" refers to the injurious consequences of acts was expressly rejected in *Scott v. SSM Healthcare St. Louis,* 70 S.W.3d 560 (Mo.App. E.D.2002). In *Scott,* plaintiff filed a medical malpractice action against a hospital asserting vicarious liability based on the conduct of two of its physicians for injuries suffered when a sinus infection was misdiagnosed and spread to his brain. *Id.* at 563. In partic-

ular, plaintiff alleged that one physician misread a CT scan and the other physician failed to instruct plaintiff to return to the hospital emergency room after being discharged. *Id.* After a jury verdict in favor of plaintiff, the defendant hospital argued that under section 538.210, a single statutory cap on noneconomic damages applied. *Id.* at 564. The trial court, however, rejected the hospital's argument determining that two statutory noneconomic damage caps applied in the case because "there were two separate occurrences of malpractice in the instant case, each of which contributed to cause [plaintiff's] injuries ... and each of which could support the application of a statutory damage cap." *Id.*

On appeal, the trial court's application of two statutory caps was affirmed. *Id.* at 571. The Eastern District interpreted the term "occurrence" as used in the context of section 538.210 as a singular wrongful act sued upon, not the receipt of injury by the plaintiff. *Id.* (citing *Romero v. United States,* 865 F.Supp. 585 (E.D.Mo.1994)). It explained that had the legislature intended one damages cap to apply regardless of the number of occurrences of medical malpractice by a single defendant, "the clearest and most unambiguous way for the legislature to have expressed such an intent would have been to simply leave the words 'per occurrence' out of the statute entirely." *Id.* "If that had indeed been the legislative intent, then using the words 'per occurrence' would amount to mere surplusage which added nothing at all to the intended statutory meaning." *Id.* Presumably, the legislature does not insert superfluous language in a statute. *Id.*

 An interpretation of the term "occurrence" as a wrongful act sued upon rather than a resulting injury or death is also consistent with other statutory law. When the legislature enacts a statute re-

ferring to terms that have had other judicial or legislative meanings attached to them, a presumption exists that it acts with knowledge of that judicial or legislative action. *Leiser v. City of Wildwood*, 59 S.W.3d 597, 603 (Mo.App. E.D.2001). The medical malpractice statute of limitations, section 516.105, utilizes the term "occurrence" to describe the alleged negligent act upon which a suit can be brought. It provides that "[a]ll actions against physicians, hospitals ... for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of *occurrence of the act of neglect complained of* ...." § 516.105 (emphasis added). Similarly, Missouri's Wrongful Death Act contemplates the term "occurrence" to mean the wrongful act sued upon. Section 537.080.1 provides, "Whenever *the death of a person results from any* act, conduct, *occurrence,* transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages ...." (emphasis added). *See also* § 537.085 (In a wrongful death action, "the defendant may plead and prove as a defense any defense which the defendant would have had against the deceased in an action based upon the same act, conduct, *occurrence,* transaction, or circumstance *which caused the death of the deceased* ....")(emphasis added). Finally, an interpretation of the term "occurrence" as a wrongful act sued upon rather than a resulting injury or death is also consistent with MAI 4.01 and cases analyzing it. The instruction for personal and property damages provides, in pertinent part:

If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe plaintiff sustained as a direct result of the occurrence mentioned in the evidence.

MAI 4.01. The term "occurrence" in the instruction refers to the defendant's wrongful act. *Smith v. Courter,* 575 S.W.2d 199, 204 (Mo.App.1978); *Nelson v. R.H. Macy & Co.,* 434 S.W.2d 767, 774 (Mo.App.1968).

In this case, Respondents submitted separate verdict directors against Dr. Newman and JSA and Dr. Dandridge and JSA for each doctor's individual acts of negligence. The jury found in favor of Respondents on the claim against Dr. Newman and JSA and on the claim against Dr. Dandridge and JSA. Thereafter, the trial court applied two statutory caps for the two occurrences or acts of negligence found by the jury.

Appellants argue that because the claimed negligent acts or omissions of the two physicians were submitted in the disjunctive and the trial court could not and did not make a finding as to which disjunctive submission was actually true and because the verdict director for both doctors included an allegation that each doctor failed to test the adequacy of the April 7, 1998, repair,[5] the jury possibly found only one occurrence in the case. This argument, however, is meritless. First, even if the jury did find that each doctor negligently failed to test the adequacy of the April 7, 1998, repair, each act was an independent act of negligence committed by each doctor that contributed to cause the death of Ms. Cook. Second, as discussed in the next point, each doctor was a defendant for purposes of section 538.210. The trial court, therefore, did not err in concluding that there were two occur-

---

**5.** See verdict directors in Facts section above.

rences in this case, the separate and distinct acts of negligence of Drs. Newman and Dandridge. The point is denied.

### Defendants

■ Appellants next claim that the trial court erred in determining that Dr. Newman, Dr. Dandridge, and JSA each constitute a defendant for purposes of applying the noneconomic damages cap of section 538.210. Section 538.210.1 provides, in pertinent part, that no plaintiff shall recover more than a limited amount per occurrence for noneconomic damages "from any one defendant as defendant is defined in subsection 2 of this section"

Subsection 2 of section 538.210 defines "defendant" as:

(1) A hospital as defined in chapter 197, RSMo, and its employees and physician employees who are insured under the hospitals professional liability insurance policy or the hospital's self-insurance maintained for professional liability purposes;

(2) A physician, including his nonphysician employees who are insured under the physician's professional liability insurance or under the physician's self-insurance maintained for professional liability purposes;

(3) Any other health care provider having the legal capacity to sue and be sued and who is not included in subdivisions (1) and (2) of this subsection, including employees of any health care providers who are insured under the health care provider's professional liability insurance policy or self-insurance maintained for professional liability purposes.

The term "health care provider" is defined in section 538.205(4) as:

[A]ny physician, hospital, health maintenance organization, ambulatory surgical center, long-term care facility, dentist, registered or licensed practical nurse, optometrist, podiatrist, pharmacist, chiropractor, professional physical therapist, psychologist, physician-in-training, and any other person or entity that provides health care services under the authority of a license or certificate.

Appellants contend that the two physicians and the corporation constitute a single defendant because, under paragraph 3 of section 538.210.2, all physicians employed by a corporation that provides health care services through such physicians and that insures such physicians under its professional liability insurance policy are included with such corporation as a single defendant. The question, therefore, is whether physicians practicing their profession through another health care provider are included within the meaning of "employees" of a health care provider under section 538.210.2(3). The meaning of the term "employees" as used in that paragraph is not clear and unambiguous. Section 538.210.2 and specifically paragraph 3 of the statute could plausibly be interpreted as defining a health care provider and the physicians employed by it either as one defendant or as separate defendants. Thus, resort to the rules of construction of a statute is necessary. *Stotts,* 118 S.W.3d at 664.

■ One rule of statutory construction is that the provisions of a statute are not read in isolation but construed together, and if reasonably possible, the provisions are harmonized with each other. *Bachtel v. Miller County Nursing Home Dist.,* 110 S.W.3d 799, 801 (Mo. banc 2003). Paragraph 1 of section 538.210.2 includes as a defendant hospital its "employees and physician employees." Paragraph 3, however, includes as a defendant any other health care provider not included in paragraphs 1 and 2 and its

"employees." Physicians are specifically included as a defined defendant in paragraph 2 of the statute and the word "physicians" is omitted in paragraph 3. Presumably, a word has the same meaning in every place used within a statute. *Weston Point Resort Condo. Owners' Ass'n, Inc. v. Floro,* 796 S.W.2d 928, 930 (Mo. App. S.D.1990)(quoting *A.M.G. v. Mo. Div. of Family Servs.,* 660 S.W.2d 370, 372 (Mo.App. E.D.1983)). When different terms are used in different subsections of a statute, presumably, the legislature intended the terms to have different meaning and effect. *Landman,* 107 S.W.3d at 251–52. Accordingly, if the legislature intended for a health care provider and its employed physicians to enjoy the same protection it provided to a hospital and its physician employees,[6] it could have expressly provided similar language. To construe the term "employees" in paragraph 3 to include physicians as suggested by Appellants would render as superfluous the use of the term "employees" in paragraph 1. The legislature's inclusion of paragraph 2 applicable to physicians, including nonphysician employees,[7] is further reflective of its intent that physicians employed by a health care provider that is not a hospital be defined as separate defendants. If the legislature had intended for a health care provider to include its employed physicians for the purposes of defining a "defendant" under the noneco-

nomic damages cap statute, it could have omitted paragraph 2, without which, a physician would have fallen within paragraph 3 as a health care provider. Presumably, the legislature intends that every word, clause, sentence, and provision of a statute have effect. *Landman,* 107 S.W.3d at 252. Conversely, a presumption exists that the legislature does not insert idle verbiage or superfluous language in the statute. *Id.* Thus, the legislature did not intend the term "employees" in paragraph 3 of section 538.210.2 to include physicians. Thus, under paragraphs 2 and 3 of the statute, JSA, Dr. Newman, and Dr. Dandridge each constitute a separate defendant. The point is denied.

### Applicable Cap Amount

 In their final point on appeal, Appellants claim that the trial court erred in applying the noneconomic damages cap in effect at the time of trial rather than the cap in effect at the time of the occurrences. They assert that application of the cap amount in effect at the time of trial in 2002, $547,000, rather than that in effect at the time of the negligent acts in 1998, $513,000, imposed or ascribed new or different legal effects to such acts in violation of the constitutional proscription against retrospective laws.

---

6. The term "physician employee" is defined in section 538.205, RSMo 2000, as "any person or entity who works for hospitals for a salary or under contract and who is covered by a policy of insurance or self-insurance by a hospital for acts performed at the direction or under control of the hospital." Merely because the term "physician employee" is defined to include not only physicians but entities who work for a hospital under a salary or contract does not negate the fact that the legislature did not intend the term "employees" to include physicians in section 538.210.2(3).

7. Appellants also argue that because the legislature used the term "nonphysician employees" in paragraph 2, it did not intend to use the word "employees" in the other paragraphs of the statute to refer only to nonphysician employees. The legislature's use of the term "nonphysician employees" in paragraph 2, however, merely indicates its intent to exclude from a defendant physician other physicians who are employed by the defendant physician. The use of the term in paragraph 2 is not inconsistent with interpretation of the term "employees" as not including physicians in paragraph 3.

As originally enacted in 1986, the non-economic damages cap statute provided that no plaintiff in a medical malpractice action could recover more than $350,000 in noneconomic damages per occurrence from any one defendant. § 538.210, RSMo 1986. A related statute enacted at the same time provides that this limitation applies "only to causes of action arising on or after February 3, 1986." § 538.235, RSMo 1986. The cap statute further provides that the limitation amount is to be increased or decreased every year in accordance with a specified economic index:

> The limitation on awards for noneconomic damages provided for in this section shall be increased or decreased on an annual basis effective January first of each year in accordance with the Implicit Price Deflator for Personal Consumption Expenditures as published by the Bureau of Economic Analysis of the United States Department of Commerce. The current value of the limitation shall be calculated by the director of the department of insurance, who shall furnish that value to the secretary of state, who shall publish such value in the Missouri Register as soon after each January first as practicable, but it shall otherwise be exempt from the provisions of section 536.021, RSMo.

§ 538.210.4.

 "The general rule of law is expressed as a reluctance of retroactive application of newly enacted legislation." *State Bd. of Registration for the Healing Arts v. Warren*, 820 S.W.2d 564, 565 (Mo. App. W.D.1991)(citing *State ex rel. St. Louis–San Francisco Ry. Co. v. Buder*, 515 S.W.2d 409, 411 (Mo. banc 1974)). Article I, Section 13 of the Missouri Constitution provides that no ex post facto law, nor law impairing the obligations of contracts nor retrospective in its operation shall be enacted. *Buder*, 515 S.W.2d at 410.

[T]he underlying repugnance to the retrospective application of laws is that an act or transaction, to which certain legal effects were ascribed at the time they transpired, should not, without cogent reasons, thereafter be subject to a different set of effects which alter the rights and liabilities of the parties thereto.

*Id.* at 411.

 "Under the rules of statutory construction, statutory provisions that are substantive 'are generally presumed to operate prospectively unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication.'" *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 872 (Mo. banc 1993)(quoting *Dep't. of Soc. Servs. v. Villa Capri Homes, Inc.*, 684 S.W.2d 327, 332 (Mo. banc 1985)). Conversely, statutory provisions that are remedial or procedural operate retrospectively unless the legislature expressly states otherwise. *Id.* Substantive law creates, defines and regulates rights; procedural law prescribes a method of enforcing rights or obtaining redress for their invasion. *Wilkes v. Mo. Highway & Transp. Comm'n*, 762 S.W.2d 27, 28 (Mo. banc 1988). The distinction between substantive law and procedural law is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit. *Id.* Merely to label certain consequences as substantive and others as procedural is not sufficient; notions of justice and fair play in a particular case are always germane. *Croffoot v. Max German, Inc.*, 857 S.W.2d 435, 436 (Mo.App. E.D.1993)(citing *Buder*, 515 S.W.2d at 411).

Appellants cite two cases, *State ex rel. St. Louis–San Francisco Railway Co. v.*

*Buder*, 515 S.W.2d 409 (Mo. banc 1974), and *Stillwell v. Universal Construction Co.*, 922 S.W.2d 448 (Mo.App. W.D.1996), for the proposition that legislative change to a statutory ceiling on damages in a particular type of case is considered substantive and, therefore, cannot be applied retroactively. In *Buder*, the Missouri Supreme Court reviewed the application of a change in the statute that set a $50,000 recovery limitation in wrongful death actions. 515 S.W.2d at 409–10. After the decedent's death but before trial, the limit was removed by the legislature. *Id.* The Court held that the limit in effect at the time of the accident still applied because the statutory limit had served to protect defendants from verdicts in excess of the limit. *Id.* at 411.

In *Stillwell*, the court reviewed an amended workers' compensation statute increasing the monetary limit of an employer's liability for burial expenses for work-related death. 922 S.W.2d at 455–56. The statutory maximum was increased by the legislature after the accident. *Id.* at 455. This court denied retrospective application of the statutory increase holding that the amendment of the statute affected the substantive rights of the employer because the employer possessed a vested right under the statute that its liability for burial expenses could not exceed a certain amount. *Id.* at 456.

This case is distinguishable from *Buder* and *Stillwell*. First, the noneconomic damages cap statute was not amended between the time of the negligent acts that cause the death of Ms. Cook and the time of trial. Section 538.210 was enacted in 1986 and has remained unchanged since. It provides a cap on noneconomic damages in a medical malpractice action and for a yearly increase or decrease in the cap amount in accordance with a specified economic index. The legislature unambiguously provided that the noneconomic damages cap statute only applied prospectively to causes of action arising on or after February 3, 1986. § 538.235. Respondents' cause of action arose in 1998 after the enactment of the cap statute. Thus, in the sense that the legislature did not *enact* a statute during the life of this cause of action, Article I, Section 13 of the Missouri Constitution is inapplicable in this case.

■ Additionally, the noneconomic damages cap statute was enacted to maintain the integrity of health care for all Missourians by limiting the liability of health care providers for noneconomic damages caused by their acts of medical malpractice. *Adams By & Through Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898, 904 (Mo. banc 1992), *cert. denied*, 506 U.S. 991, 113 S.Ct. 511, 121 L.Ed.2d 446 (1992); *Scott v. SSM Healthcare St. Louis*, 70 S.W.3d 560, 570 (Mo. App. E.D.2002). While pursuing that purpose, the legislature contemplated the effect of inflation on an award of noneconomic damages in subsection 4 of the statute. Section 538.210.4 unambiguously expresses the legislative intent that a plaintiff's noneconomic damages award be protected from inflation. The practical effect of the subsection is that compensation received from injury incurred is not diminished from the time of the act of negligence to the time of trial, which may occur years later, by the impact of inflation. In that regard, the annual adjustment for inflation merely affects procedure or remedy. It neither defines or regulates a plaintiff's right to compensation nor imposes or ascribes new or different legal effects to a defendant's conduct in violation of the constitutional proscription against retrospective laws. Thus, the applicable cap amount in this case is $547,000, the cap amount in effect at the time of trial. *See Adams*, 832 S.W.2d at 902 n. 4, 904; *Scott*, 70 S.W.3d at 570 n. 10; *Burns v. Elk River Ambulance, Inc.*, 55 S.W.3d 466, 485 (Mo.

App. S.D.2001)(where courts applied cap amounts in effect at time of trial). The point is denied.

## Conclusion

The trial court erred in applying twelve statutory caps for noneconomic damages in this case. Instead, four noneconomic damages caps each in the amount of $547,000 shall be awarded. For the occurrence of Dr. Newman's negligence, Respondents, as a single plaintiff, shall collect a statutory cap from Dr. Newman and a separate statutory cap from JSA. For the occurrence of Dr. Dandridge's negligence, Respondents, as a single plaintiff, shall collect a statutory cap from Dr. Dandridge and a separate statutory cap from JSA. The judgment is, therefore, reversed, and the case is remanded to the trial court for entry of a judgment consistent with this opinion.

All concur.