Lugene HUDSON, Respondent,

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

No. WD 65912.

Missouri Court of Appeals,
Western District.

March 6, 2007.

Cheryl Caponegro Nield, Associate Solicitor, Jefferson City, for Appellant.

Philip F. Cardarella, Kansas City, for Respondent.

Before HOWARD, P.J., BRECKENRIDGE and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

The Director of Revenue appeals the judgment of the trial court reversing the director's suspension of Lugene Hudson's vehicle registration for submitting false proof of insurance pursuant to section 303.042.4, RSMo Cum.Supp.2006.[1] In her sole point on appeal, the director claims that the trial court erred in reinstating Mr. Hudson's vehicle registration because its decision is against the weight of the evidence, is unsupported by substantial evidence, and misapplies the law in that the director properly suspended Mr. Hudson's vehicle registration because he presented a false insurance card to the Department of Revenue. Specifically, the director con-

---

1. All statutory references to section 303.042 are to the 2006 Cumulative Supplement to the Revised Statutes of Missouri 2000. All other statutory references are to the Revised Statutes of Missouri 2000, unless otherwise indicated.

tends that, although Mr. Hudson believed that his insurance card was valid, his belief is irrelevant because, under the Motor Vehicle Financial Responsibility Law, liability is strict. Because this court finds that section 303.042.4 is a strict liability statute, the trial court erred in reinstating Mr. Hudson's vehicle registration. The judgment of the trial court is reversed and remanded for entry of judgment reinstating the suspension of Mr. Hudson's vehicle registration.

### Factual and Procedural Background

On October 26, 2004, Mr. Hudson attempted to renew his vehicle registration at the Department of Revenue's Raytown branch office. At the branch office, Mr. Hudson gave a Department of Revenue employee his paperwork, which included an insurance identification card, as required by section 303.026. After viewing the card, the employee informed Mr. Hudson that his insurance identification card was invalid. The employee believed Mr. Hudson's insurance card was false because the paper and the colors were not the same as other Farmers Insurance Company cards, the print was not properly aligned, and the back of the card had several spacing, capitalization, and grammatical errors. The employee retained the insurance card and returned the rest of Mr. Hudson's paperwork to him. Sometime that same day, the employee contacted a representative at Farmers Insurance Company and the representative was unable to find a valid insurance policy by name or policy number.[2]

After learning that his insurance card was invalid, Mr. Hudson attempted to locate the individual who sold him the policy. Mr. Hudson had purchased the policy at a mall from a man dressed in a suit who was sitting at a table with a sign that said automobile insurance. The man represented to Mr. Hudson that he was from Farmers Insurance Company. Mr. Hudson told the man how much he paid for his insurance and the man told Mr. Hudson "I can get it cheaper" because he contacted the insurer directly, rather than having the expense of an office. Mr. Hudson then filled out some paperwork, paid for the policy, and was given an insurance identification card. After the Department of Revenue employee told Mr. Hudson that the card was not valid, he returned to the mall where he had purchased the policy, but the man was no longer there.

Upon further investigation by the Department of Revenue, a Farmers Insurance representative confirmed that the company was not able to locate any policy with Mr. Hudson's name or policy number in the company's database. On December 2, 2004, the Department of Revenue sent notice to Mr. Hudson that it was suspending his vehicle plates on January 9, 2005, for a period of one year because there was reason to believe that the proof of insurance Mr. Hudson submitted to the Department of Revenue was false. The notice referenced section 303.042.4. In response to the Department's notice, Mr. Hudson requested an administrative hearing, and an appeals referee of the Administrative Hearing Section of the Department of Revenue heard the matter on January 26, 2006.

In lieu of appearing at the hearing, Mr. Hudson elected to submit his testimony by affidavit. In the affidavit, Mr. Hudson provided a brief description of how he procured the insurance card. Mr. Hudson also stated that when he attempted to register his vehicle that was the first time

2. The record is not clear whether contact was made with Farmers Insurance Company while Mr. Hudson was at the branch office or after he left.

he knew that his insurance was invalid. Mr. Hudson further stated that, immediately upon learning that his insurance was invalid, he went to a valid insurance broker and obtained vehicle insurance. Mr. Hudson then resubmitted his vehicle registration application at the Department of Revenue, and his vehicle registration was renewed.

On February 8, 2005, the appeals referee issued a Statement of the Case, Findings of Fact, Conclusions of Law and Decision finding that the proof of insurance Mr. Hudson submitted to the Department of Revenue was false. The document also included the director's decision to suspend Mr. Hudson's vehicle registration for one year, effective March 13, 2005. Pursuant to section 303.290.2, Mr. Hudson filed a petition for review of the director's decision in the Circuit Court of Jackson County, claiming that he did not knowingly submit a false proof of insurance to the Department of Revenue. On May 19, 2005, the circuit court held a *de novo* hearing, at which Mr. Hudson testified that he had no way of knowing that the insurance card was invalid and that he thought it was real. On June 20, 2005, the trial court found "the issues in favor of" Mr. Hudson, granted his petition for review, and reversed the decision of the director. The director filed this appeal.

## Standard of Review

In reviewing the trial court's judgment regarding the director's decision to suspend an owner's vehicle registration for submitting false proof of insurance under section 303.042.4, this court reviews the trial court's judgment and not the decision of the director. *Dilts v. Dir. of Revenue*, 208 S.W.3d 299, 301 (Mo.App. W.D. 2006). This court will affirm the judgment of the trial court unless it is against the weight of the evidence, unsupported by

substantial evidence, or erroneously declares or applies the law. *Id.* This court defers to the trial court's determinations of credibility. *Whitworth v. Dir. of Revenue*, 207 S.W.3d 623, 624 (Mo.App. E.D. 2006). All evidence and inferences therefrom are viewed in the light most favorable to the prevailing party. *Id.* However, where " 'the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence,' " then this court need not defer to the judgment of the trial court. *Id.* (citation omitted).

## Liability Under Section 303.042.4 is Strict Liability

In her sole point on appeal, the director claims that the trial court erred in reinstating Mr. Hudson's vehicle registration because its decision is against the weight of the evidence, unsupported by substantial evidence, and misapplies the law, in that the director properly suspended Mr. Hudson's vehicle registration because he presented a false insurance card to the Department of Revenue. Specifically, the director contends that, although Mr. Hudson believed that his insurance card was valid, his belief is irrelevant because, under section 303.042.4 of the Motor Vehicle Financial Responsibility Law, liability is strict.

On the other hand, Mr. Hudson claims that the term "false" in section 303.042.4 evidences the legislature's intention that the owner must knowingly submit a false insurance card. Because he did not know the insurance card he submitted was false, Mr. Hudson argues that the trial court did not err in reversing the director's suspension of his vehicle registration. Mr. Hudson alternatively claims that, even if there is no knowledge requirement and liability is strict, the trial court did not err because the director failed to prove that the "insurance card submitted was in fact false." He

further claims that there is also an "issue" as to whether "the alleged false insurance card was ever actually 'submitted.'"

Under Missouri's Motor Vehicle Financial Responsibility Law, every motor vehicle owner, at the time of vehicle registration, is required to show an insurance identification card or other proof of financial responsibility. Section 303.026.2. If the proof of insurance submitted by a vehicle owner is false, the director is required to suspend the owner's vehicle registration and driving privilege for one year. Section 303.042.4. As stated above, the director claims that liability under section 303.042.4 is strict liability, while Mr. Hudson asserts that lack of knowledge of the falsity of the insurance card is a proper defense. Resolution of this case requires an interpretation of section 303.042.4.

■■■ The primary object of statutory interpretation is to ascertain the intent of the legislature from the language used. *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 909 (Mo. banc 2006). In doing so, this court considers the words used in the statute in their plain and ordinary meaning. *Id.* at 910. "When the legislative intent cannot be determined from the plain meaning of the statutory language, rules of statutory construction may be applied to resolve any ambiguity." *Id.*

Section 303.042.4 provides:

If the director determines that the proof of insurance submitted by a motor vehicle owner or operator pursuant to this chapter is *false,* the director shall suspend the owner's vehicle registration and operator's driving privilege. The director shall terminate the suspension one year after the effective date upon payment by the owner or operator of a reinstatement fee of one hundred fifty dollars and submission of proof of insurance as prescribed in section 303.026 or some other form of proof of insurance as prescribed by the director.

(Emphasis added.) Because "false" is not defined in Chapter 303, "its meaning is ascertained from the dictionary definition." *See United Pharmacal,* 208 S.W.3d at 911. In the dictionary, false is defined as "not genuine," or "not true." Merriam-Webster's Collegiate Dictionary 418 (10th ed.2000). Either of these definitions would support the director's position that "false" does not require any knowledge on the part of Mr. Hudson regarding the falsity of the insurance card. The dictionary definition of "false," however, also has several alternative definitions that do suggest a knowledge element. For example, the dictionary also defines "false" as "intentionally untrue," "adjusted or made so as to deceive," or "intended or tending to mislead." Merriam-Webster's Collegiate Dictionary 418 (10th ed.2000). These definitions would lend support to Mr. Hudson's argument that in order for him to submit a "false" insurance card, he must have knowledge of the card's falsity. Consequently, this court finds that the term "false" is ambiguous because there are two equally plausible meanings of the term. *Polston v. Aetna Life Ins. Co.,* 932 S.W.2d 786, 788 (Mo.App. E.D.1996). Therefore, "[l]egislative intent on this issue cannot be discerned from section [303.042.4's] plain language." *United Pharmacal,* 208 S.W.3d at 911.

■■■ When the legislature's intent cannot be discerned from the plain language of the statute, "recognized principles of statutory construction" must be employed. *Id.* To discern legislative intent, the court should consider the problem the statute was enacted to address and examine the entire act to determine its evident purpose. *Id.* at 911–12. In addition, the court may review earlier versions of the statute. *Id.* at 912. "'Statutory

construction should not be hyper technical but instead should be reasonable, logical, and should give meaning to the statutes.' " *Id.* (citation omitted).

First, the purpose of the Motor Vehicle Financial Responsibility Law "is to protect the public from injury or damage by the operation of motor vehicles upon the public highways and to that extent it is remedial." *City of St. Louis v. Carpenter,* 341 S.W.2d 786, 788 (Mo.1961). "A remedial statute is one 'enacted for the protection of life and property.' " *E. Mo. Laborers' Dist. Council v. City of St. Louis,* 5 S.W.3d 600, 602 (Mo.App. E.D. 1999) (citation omitted). When a remedial statute is ambiguous, this court should construe the statute " 'to meet the cases which are clearly within the spirit or reason of the law, or within the evil which it was designed to remedy, providing such interpretation is not inconsistent with the language used[.]' " *Martinez v. State,* 24 S.W.3d 10, 19 (Mo.App. E.D.2000) (citations omitted). In addition, all doubts should be resolved " 'in favor of applicability of the statute to the particular case.' " *Id.* (citations omitted). The public policy behind the Missouri Motor Vehicle Safety Responsibility Law supports a liberal interpretation of the statute. *Weathers v. Royal Indem. Co.,* 577 S.W.2d 623, 625 (Mo. banc 1979). Construction of the statute to give liberal meaning to its remedial purpose to ensure that those injured by motor vehicles upon Missouri's public highways are protected would lend support to the director's argument that section 303.042.4 imposes strict liability for submitting false insurance.

Second, in discerning legislative intent, "one part of a statute should not be read in isolation from the context of the whole act." *Martinez,* 24 S.W.3d at 18. Rather, "it is proper that provisions of the entire act be construed together and, if reasonably possible, all provisions should be harmonized." *Id.* In support of her contention that an owner of a motor vehicle who submits false proof of insurance at the time of vehicle registration is strictly liable under section 303.042.4, the director cites case law interpreting another section of the act, section 303.025.

Prior to January 1, 2000, section 303.025 provided that an owner of a motor vehicle shall not *operate* a motor vehicle, or authorize another person *to operate* the vehicle, unless the owner maintains the financial responsibility required under the law. Section 303.025.1, RSMo Cum.Supp.1998. The legislature amended section 303.025.1 in 1999, effective January 1, 2000. The amended version of the statute now provides, in relevant part:

No owner of a motor vehicle registered in this state, or required to be registered in this state, shall operate, *register or maintain registration of a motor vehicle,* or permit another person to operate such vehicle, unless the owner maintains the financial responsibility which conforms to the requirements of the laws of this state.

Section 303.025.1, RSMo Cum.Supp.2006 (emphasis added).

Cases interpreting section 303.025, prior to the January 1, 2000 amendment, have held that liability for *operating* a motor vehicle without the required demonstration of financial responsibility is strict liability. *See Wies v. Dir. of Revenue,* 926 S.W.2d 917, 919 (Mo.App. E.D. 1996); *Kinder v. Dir. of Revenue,* 895 S.W.2d 627, 630 (Mo.App. E.D. 1995); *Koehr v. Dir. of Revenue,* 863 S.W.2d 663, 665 (Mo.App. E.D. 1993); *Evenson v. Dir. of Revenue,* 796 S.W.2d 33, 37 (Mo.App. W.D. 1990); *Huff v. Dir. of Revenue,* 778 S.W.2d 334, 335 (Mo.App. E.D. 1989). "The legislature is presumed to know the

existing case law when it enacts a statute." *Scruggs v. Scruggs,* 161 S.W.3d 383, 391 (Mo.App. W.D.2005). In amending section 303.025 to include the *registration* of a vehicle, in light of the case law interpreting that section to impose strict liability for *operating* a motor vehicle without financial responsibility, it is reasonable to conclude that the legislature intended for liability to also be strict when *registering* a vehicle without proper proof of financial responsibility.

Moreover, section 303.026 concerns the registration requirements, including requirements regarding evidence of insurance, for motor vehicles. In particular, subsection 2 of section 303.026 provides:

> No motor vehicle owner shall be issued registration for a vehicle unless the owner, or his authorized agent, signs an affidavit provided by the director of revenue at the time of registration of the vehicle certifying that such owner has and will maintain, during the period of registration, financial responsibility with respect to each motor vehicle that is owned, licensed or operated on the streets or highways. The affidavit need not be notarized, but it shall be acknowledged by the person processing the form. The affidavit shall state clearly and in bold print the following: "Any false affidavit is a crime under section 575.050 of Missouri law.". In addition, every motor vehicle owner shall show proof of such financial responsibility by presenting his or her insurance identification card, as described in section 303.024, or a copy thereof, or some other proof of financial responsibility in the form prescribed by the director of revenue at the time of registration unless such owner registers his vehicle in conjunction with a reciprocity agreement entered into by the Missouri highway reciprocity commission pursuant to sections 301.271 to 301.279,

RSMo, or unless the owner insures the vehicle according to the requirements of the division of motor carrier and railroad safety pursuant to section 390.126, RSMo.

Under subsection 2 of section 303.026, an individual registering a vehicle in Missouri must sign an affidavit stating that they will maintain financial responsibility for each motor vehicle that they own, license, or operate on Missouri streets and highways. As expressly set forth in the statute, making a "false" affidavit is a crime under section 575.050. Section 575.050.1 provides that "[a] person commits the crime of making a false affidavit if, *with purpose to mislead any person,* he, in any affidavit, swears falsely to a fact which is material to the purpose for which said affidavit is made." (Emphasis added.) In referring to section 575.050 in regard to making a "false" affidavit concerning financial responsibility, the legislature made clear its intent that knowledge of the falsity of the statement is required.

Similarly, section 303.178 concerns the prohibition of displaying false evidence of insurance to a law enforcement officer. Specifically, section 303.178 provides that "[n]o person shall display evidence of insurance to a law enforcement officer *knowing* there is no valid liability insurance in effect on the motor vehicle as required pursuant to this chapter, or knowing the evidence of insurance is illegally altered, counterfeit or otherwise invalid evidence of insurance." (Emphasis added.) Under 303.178, the legislature again made it clear its intent that knowledge of the falsity of the insurance card displayed to a law enforcement officer is required.

█ By including a "knowledge" element in both section 303.026.2 and section 303.178, which both concern the question of false motor vehicle insurance, the legis-

lature demonstrated that it knew how to express its intent to require a knowledge element regarding motor vehicle insurance. In section 303.042.4, on the other hand, the legislature placed no such mental state requirement or knowledge element on the term "false." The absence of any mental state or knowledge element in section 303.042.4, combined with the knowledge element incorporated into similar statutes, supports the inference that the legislature did not intend for there to be a knowledge element regarding submission of a "false" insurance card to the Department of Revenue. *See Jantz v. Brewer,* 30 S.W.3d 915, 918 (Mo.App.2000) (legislature presumed to have acted intentionally when it includes language in one section of statute, but omits it from another section).

■ Moreover, this finding is also in accord with numerous other statutes regarding the making of false statements, declarations, or filings, which all expressly include a knowledge element within the statute.[3] "Presumably, the legislature intends that every word, clause, sentence,

and provision of a statute have effect." *Cook v. Newman,* 142 S.W.3d 880, 892 (Mo.App. W.D.2004). Likewise, "a presumption exists that the legislature does not insert idle verbiage or superfluous language in the statute." *Id.* If the term "false," included a knowledge element, the legislature would not have had to include a knowledge element in each statute in which the knowledge requirement is expressly set forth. Inclusion of such a requirement would have been "idle verbiage or superfluous." Therefore, this court finds that the legislature did not intend to include a knowledge element in section 303.042.4 and, accordingly, liability is strict.

■ In sum, while this court finds that the term "false" in section 303.042.4 is ambiguous, when read in the context of the underlying purpose of the act, and in conjunction with other sections and earlier versions of the act, this court agrees with the director that the legislature intended that liability for submitting a "false" insurance card is strict liability.[4] Accordingly,

---

3. *See, e.g.,* Section 575.060.1, RSMo Cum. Supp.2006 ("[a] person commits the crime of making a false declaration if, with the purpose to mislead a public servant in the performance of his duty, he: (1) Submits any written false statement, *which he does not believe to be true* [.]") (Emphasis added.); Section 103.057, RSMo 2000 ("[a] person who *knowingly makes a false statement*") (Emphasis added.); Section 137.420, RSMo 2000 ("Any false certification to any statement filed by any person with the county assessor under sections 137.325 to 137.420, *made with intent to defraud,* shall constitute a misdemeanor and be punishable as such.") (Emphasis added.); Section 137.540, RSMo 2000 ("If any taxpayer *knowingly files a false return,* the assessor shall notify the board of equalization thereof in writing.") (Emphasis added.); Section 150.260, RSMo 2000 ("Any person, persons, copartnership or corporations, who shall *knowingly* file or suffer to be filed a false statement of the aggregate amount of goods,

wares and merchandise therein required to be filed, shall, upon conviction, forfeit his or their license, and be deemed guilty of a misdemeanor[.]") (Emphasis added.).

4. If an owner operates or registers a motor vehicle in this state without maintaining financial responsibility conforming to the requirements of the laws of this state, the owner is guilty of a class C misdemeanor. Section 303.025.1, .3. The Supreme Court has recently held that when there is a possibility that a person or entity in an administrative proceeding could also face a criminal penalty, "th[e] Court will apply the rule of lenity[,]" which "dictates that ambiguity in a criminal statute must be resolved against the government." *United Pharmacal,* 208 S.W.3d at 913. Prior to applying the rule of lenity, however, the Court determined that it could not resolve the ambiguity in the statute by utilizing recognized principles of statutory construction. *Id.* Because this court is able to

even though the court believed that Mr. Hudson had been "scammed," a fact to which the director agreed, whether Mr. Hudson knew that the insurance card was false when he submitted it to the employee at the Department of Revenue is irrelevant because, under section 303.042.4, Mr. Hudson's liability for submitting a false insurance card is strict.

Nevertheless, Mr. Hudson further argues that the trial court did not err because the director failed to actually establish that the insurance card he submitted was "false." This court disagrees. The director presented evidence that Farmers Insurance, the insurance company that allegedly issued a policy to Mr. Hudson, had no record of a policy with Mr. Hudson's name or the policy number that was printed on Mr. Hudson's insurance card. At trial, Mr. Hudson testified that he got his insurance card at the mall from a man sitting at a desk with a sign that said automobile insurance. After presenting the card to the Department of Revenue, which told him that the card was invalid, he returned to the mall to try to find the man who sold him the insurance. A reasonable inference from Mr. Hudson's act in returning to the mall to search for the man who sold him the insurance, only to find that he was not there, is that Mr. Hudson believed he was scammed and that he did not actually believe that the policy he purchased was valid. Moreover, while the trial court made no written findings in this case, the trial court did state, on the record, that it believed that Mr. Hudson had been scammed. While not part of the court's judgment, the trial judge's oral comments "may be considered as an explanation of the judgment, when as here, the comments do not oppose, dispute, or impeach the judgment and are not used as a substitute for the judgment." *St. Pierre v. Dir. of Revenue,* 39 S.W.3d 576, 578–79 n. 5 (Mo.App. S.D. 2001) (internal citation omitted). Therefore, this court finds that the evidence was sufficient to demonstrate that the insurance card Mr. Hudson submitted to the Department of Revenue was false.

Finally, Mr. Hudson contends that there is also an "issue" as to whether "the alleged false insurance card was ever actually 'submitted.'" In particular, he argues that when the Department of Revenue employee told him that she was unable to verify the authenticity of his insurance card, he immediately went and obtained valid insurance and then "submitted" that insurance to the department with his title application. Mr. Hudson claims that "[i]t is not unreasonable to conclude that the court's order could be held to maintain that the submission of unquestioned valid insurance at the actual time of registration was the actual 'submission' covered by [section] 303.042.4." Mr. Hudson's claim, however, is without merit.

First, it must be noted that Mr. Hudson does not challenge that his actions in giving the Department of Revenue employee the false insurance card fit within the plain and ordinary meaning of the term "submitted." Instead, he appears to argue that because the Department of Revenue did not register his vehicle until he later obtained valid proof of

discern the legislature's intent by employing the traditional canons of statutory construction, it need not employ the rule of lenity to resolve the ambiguity in the term "false," as the Missouri Supreme Court did in *United Pharmacal.* *Id.* It should also be noted that if the rule of lenity were applied in this case to require a knowledge element, the cases that have found that liability is strict for operating a motor vehicle without financial responsibility would be called into question. *See Wies,* 926 S.W.2d at 919; *Kinder,* 895 S.W.2d at 630; *Koehr,* 863 S.W.2d at 665; *Evenson,* 796 S.W.2d at 37; *Huff,* 778 S.W.2d at 335.

insurance, his act of giving false proof of insurance to the Department of Revenue would not qualify as "submitting" the false proof of insurance. In other words, he argues that an attempt to register a motor vehicle with false proof of insurance would not fall within the parameters of the statute. Under this argument, a motor vehicle owner could never be found to submit false proof of insurance if the Department of Revenue recognized the proof of insurance as false at the time it was presented and refused to register the motor vehicle. Section 303.042.4 attaches consequences to the act of submitting false proof of insurance to the Department of Revenue not *registering* a vehicle with false insurance. When Mr. Hudson gave the Department of Revenue employee the "false" insurance card when he first attempted to register his vehicle, he "submitted" false proof of insurance and was strictly liable, regardless of whether, at a later point in time, he submitted valid insurance and was then able to *register* his vehicle.

The judgment of the trial court reinstating Mr. Hudson's vehicle registration is reversed. The cause is remanded to the circuit court for judgment reinstating the suspension of Mr. Hudson's vehicle registration.

All concur.